## HOLT v. HOLT.

No. 2209, Okla. T   Opinion Filed May 12, 1909.

(102 Pac. 187.)

1.   REFERENCE—Referees—Qualification—Interest. In order to disqualify, the interest of the judge must be in the subject-matter of the cause, and not merely in a legal question involved, and a referee, in an action growing out of a divorce suit brought to secure an enlargement of the alimony allowed within the scope of the reference, sits as the judge of the court, and will not be held disqualified solely and on account of alleged interest, where the facts relied on to establish such disqualification are that he was engaged in the practice of the law, and was then employed as an attorney in a cause in which the facts and legal questions involved were substantially the same as in the cause referred to him.

2.   JUDGMENT—Vacation—Filing Papers in Original Action. Where an action is brought under section 562, art. 22, c. 66 (paragraph 4760) Wilson's Rev. & Ann. St. Okla. 1903, in the same court, between the same parties, as the original suit, and is given the same title, the fact that the clerk of the court designates the case by a different number than that given the original case will not divest the court of jurisdiction to try and determine the same, even thought the language of section 564, art. 22, c. 66 (paragraph 4762) Wilson's Rev. & Ann. St. Okla. 1903, be susceptible to the construction that the papers should be filed with those in the first case.

3.   PLEADING—Absence of Reply—Waiver. In an action where defendant voluntarily goes to trial without a reply, when he is not bound to do so, he thereby waives a reply, and is regarded as consenting to go to the proof of the answer as if it were denied, and after the hearing and conclusion of the evidence, error is not committed by the trial court in overruling a motion for judgment on the pleadings on account of the absence of such reply.

4.   ESTOPPEL—Pleading—Necessity—Sufficiency. An estoppel must be pleaded in order to enable a party to avail himself of it on the trial, and must be pleaded with particularity in order to constitute either a cause of action or defense. No intendments are indulged in favor of such plea, but it is incumbent upon the party pleading to aver all the facts essential to its existence.

5.   DIVORCE—Claim in Property of Other—Successful Party—Fraud. Although the decree runs in favor of the wife, who was plaintiff, the husband is properly denominated the successful party, in an

action for divorce and alimony when the wife against her wishes and desires was induced, on account of the exercise of fraud and undue influence on the part of the husband, to permit the same to be so brought and such decree rendered.

6. **SAME—Alimony—Fraud.** Where, on the granting of a decree for a divorce and alimony to a wife, it is made to appear in a subsequent proceeding brought to secure additional alimony that such decree was procured through fraud and undue influence of the husband, and that the property settlement made at the time was inequitable and unfair, and procured in the same way, the fact that the wife on the institution of such proceeding neither tendered nor offered to return the monthly or other payments received under the property settlement contract and decree will not preclude or estop her from bringing and maintaining such proceeding where the necessities of the wife are shown to have absorbed such payments.

7. **SAME—Property Settlement—Fraud—Confirmation.** The contract so entered into, and the decree rendered pursuant thereto, contained a provision obligating the husband to buy and deed to the wife a home or house to cost not to exceed $2,000. The findings of the referee disclose that the property bought and accepted by the wife under such agreement cost $2,700, and was purchased and accepted during the continuance of the monthly payments provided for. The deed executed and delivered contained the recital that the grantee "hereby agrees to accept said property and said allowance as full and complete settlement of all property rights between the parties hereto." Held that, under the facts disclosed by the record, the mere acceptance of such deed and the property so conveyed, did not in itself amount to a confirmation of the contract and an acquiescence in the decree in the absence of any finding or showing that the wife consented to the stipulation, or that it was made in the entire absence of any undue influence, with knowledge of her rights and not made under the wrongful supposition that the original contract and transaction was binding and valid.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; B. F. Burwell. Judge.*

Petition by Eva Holt against Frank R. Holt. Judgment for plaintiff, and defendant brings error. Affirmed.

*Flynn & Ames,* for plaintiff in error.—The opinion contains copious references to brief of counsel.

*T. F. McMechan, John H. Shirk,* and *R. G. Hays,* for defendant in error.—On disqualification of referee: *People v. Edmonds,*

15 Barb. 529; *McFaddin v. Preston,* 54 Tex. 403. Presumption of undue influence in settlements which are unfavorable to wife: 19 A. & E. Enc. of Law 1248; *Witbeck v. Witbeck,* 25 Mich. 429; *Cheuvront v. Cheuvront,* 54 W. Va. 171. On question of equitable estoppel: *Brigham Young Trust Co. v. Wagener* (Utah) 40 Pac. 764; *First Nat. Bank v. Ragsdale,* 171 Mo. 168; *Gray v. Gray,* 83 Mo. 106; *Willetts v. Willetts,* 104 Ill. 122.

DUNN, J.  On June 22, 1904, a decree of divorce and alimony was rendered by the district court of Oklahoma county, in an action wherein Eva Holt, the defendant in error herein, was plaintiff, and Frank R. Holt, plaintiff in error, was defendant. Under this decree the care, custody, and control of an infant son of the parties was given to the defendant; the plaintiff was enjoined from interfering therewith, but permitted to visit him at all reasonable times; alimony was allowed in money and property in accordance with a written contract entered into by the parties. On the 14th day of April, 1906, a period of about 22 months thereafter, the plaintiff in that case filed her petition in the same court, in which she alleged that the defendant in the divorce action, through his fraud and conspiracy with his attorney, B. O. Young, and others, intimidated plaintiff into making application for the divorce, and prayed a judgment modifying the decree made therein as to the alimony and the custody of the child. The petition is voluminous, and it is not deemed essential to set the same out at length, in view of the necessity of reciting at some length the findings of the referee to whom the case was referred for trial, and to set out the petition would be to duplicate much of the material matters in the case. To this petition the defendant filed an answer, in which he admitted the marriage and the divorce decree and the provisions for alimony and custody of the child, but denied the allegations of intimidation and collusion, and for a further defense pleaded the acceptance of the allowances on the part of plaintiff, given her under the terms of the decree and contract as an estoppel to the maintenance of this action, also that a further

consideration given was a confirmation of the contract, and insists in this court that the claim of the plaintiff is not entitled to the consideration of a court of equity by virtue of her retention of the fruits of the contract which she seeks to set aside. No reply appears to have been filed in the case, and on these pleadings, and the issues made thereby, the cause was referred to a referee, with full authority to take testimony, and to do all acts and things necessary to a complete and final hearing thereof, and to include in his report findings of fact and conclusions of law and recommendations of judgment in the premises. Evidence was taken during the summer. of 1906, and the referee reported his findings of fact and conclusions of law, in all of which he sustained the contentions of plaintiff.

On the threshold of our investigation, and before looking into the case on its merits, we are confronted by a verified motion on the part of counsel for plaintiff in error, duly filed in, and denied by, the district court of Oklahoma county. This motion shows that the referee to whom the case was referred is an active practitioner of law, and that at the time of the hearing before him, he was employed in a case, pending in the district court of the county where he resided, wherein he represented a plaintiff, whose cause of action and the facts out of which it arose were practically identical with this case. To this motion was attached certified copies of pleadings in that cause, which show that the facts involved in the same, the issues presented, and the law applicable thereto were all substantially the same as the facts in the case at bar. No imputation is made as to the integrity of the referee or his fitness otherwise than the cause for disqualification here urged. It is contended that, by virtue of the fact that he was counsel for a litigant in a cause so closely allied in its controlling elements to the one then before him, this rendered him an unsuitable person to perform the duties imposed upon him by his appointment as referee. Knowledge of these things did not come to plaintiff in error or his counsel until after the hearing.

Paragraph 4452, Wilson's Rev. & Ann. St. Okla. 1903, pro-

vides that "a trial is a judicial examination of the issues, whether of law or fact, in an action," and the succeeding section provides that trial of actions for recovery of money or specific, real, or personal property shall be by a jury, unless waived, and paragraph 4454, provides that:

"All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by jury, or referred as provided in this Code."

Under these statutes divorce actions, and the issues of fact growing out of the same, are triable by the court, subject to the powers expressed. In the case at bar it was agreed by the parties that this case should be tried by a referee. Paragraph 4480, Wilson's Rev. & Ann. St. 1903, provides:

"A trial before referees is conducted in the same manner as a trial by the court. * * * The report of the referees upon the whole issue stands as the decision of the court, and judgment may be entered thereon in the same manner as if the action had been tried by the court. When the referee is to report the facts, the report has the effect of a special vrdict."

The court under our statute doubtless possessed the power to have retained this cause for trial before it, or, upon an agreement by the parties as was had, have been required to submit the same for trial before a referee. Under our statute it is not contemplated that issues in divorce actions shall be tried before a jury, and the uniform practice of our state is against it. Hence, in the trial of divorce suits, the court, or a referee appointed by it, hears and determines these causes on both law and fact. In consequence whereof the one appointed as referee should possess and have the same qualifications as the judge of a court, for he sits in the place of the court, on a reference such as was here made.

Section 1, art. 1, c. 25, p. 220, Sess. Laws 1903, provides that a change of judge may be had where the judge of the court has been counsel, or is kin, to either party, or is interested. The only portion of the provision within which the objection urged in this case could possibly come is that the referee herein was interested, and that question then arises, What character of inter-

est is necessary in order to effect his disqualification? Counsel for appellant call our attention to two cases as authority for their position that the referee was disqualified from acting, and that the motion to set aside the reference and his report should be sustained. These are the cases of *Oakley v. Aspinwall et al.,* 3 N. Y. 547, and *Forrest Coal Company et al. v. Doolittle, Judge, et al.,* 54 W. Va. 210, 46 S. E. 238.

In the case of *Oakley v. Aspinwall et al., supra,* the court held:

"Where a judge is disqualified to sit in a cause by reason of consanguinity to one of the parties, he cannot sit even by consent of both parties; and, if he do, the judgment will be vacated. And the disqualification exists, although the party to whom the judge is related is a mere surety for another, or is fully indemnified against the consequences of the suit."

In this case it appeared that the judge was kin to one of the parties, and was therefore disqualified to sit and take part in the decision of the cause.

In the other case, *Forrest Coal Company v. Doolittle, Judge, et al., supra,* the judge of the court where the case was pending was disqualified by having taken a lease, together with other persons, upon a part of a tract of land against which a suit by the state was instituted. These cases can hardly be said to be in point, for it is not contended here that the disqualification of the referee went further than a vicarious, and not a personal, interest in the legal question before him, and an interest in the question is held, in the case of *Forrest Coal Company v. Doolittle, Judge, et al., supra,* a case cited by appellant, not sufficient to disqualify, reading:

"In order to disqualify, the interest of the judge must be in the subject-matter of the cause, and not merely in a legal question involved in it."

To the same effect is the holding in a large number of cases, among which are *McFaddin et al. v. Preston et al.,* 54 Tex. 403; *People v. Edmonds,* 15 Barb. (N. Y.) 529.

In the case last cited, *People v. Edmonds*, the court in passing upon it said:

"A judge is precluded from acting in his official capacity 'in any cause to which he is a party, or in which he is interested,' but the prohibition does not extend to cases where the interest is simply in some question of law involved in the controversy. The statute very probably stops short of that, as judges must often, and necessarily, consider and decide questions which may be applicable to their own rights, or to their property, should they be fortunate to possess any."

A large number of authorities in keeping with the foregoing are cited under the title "Judges," 23 Cyc. p. 579, in which it is held that remote or contingent interest in a controversy will not affect the qualification of a judge to hear the same. The referee has made an extended report of his findings of fact, and conclusions of law. It is not contended, on the part of plaintiff in error, that the findings of fact are not supported by the evidence. Indeed the evidence is not brought to this court. The referee's interest merely as attorney in another cause similar to the one being heard before him could hardly be said to be carried to the facts. No matter to what extent his interest would go, it would not change one fact in either case. The only thing that could be affected might be his judgment on the law applied to the facts. While his findings of fact, in the absence of the evidence, come to this court with the presumption in their favor that they were fully sustained (17 Ency. Plead. & Prac. 1082), his conclusions of law are not given such advanced ground. The law of the case was all he could possibly have had an interest in, and that is reviewed here untrammeled by any declaration on his part.

It follows therefore that in cases such as this, being triable before a judge sitting as a court, when tried before a referee, the things essential to disqualify a judge are also necessary to effect the disqualification of a referee in such case, and the fact that the referee appointed herein may have been interested in the same question in another case, as an attorney therein, would not of itself

be sufficient, to disqualify him, and the ruling of the lower court on the motion is accordingly sustained.

The next proposition to be considered is the contention that this action cannot be maintained because, as is contended, it is brought separately in the district court, and not in the original divorce case. We are cited to two cases in support of this proposition: *Corder v. Speake,* 37 Or. 105, 51 Pac. 647, and *Karren v. Karren,* 25 Utah, 87, 60 Pac. 465, 60 L. R. A. 294, 95 Am. St. Rep. 815.

Section 562, art. 22, c. 66 (paragraph 4760) Wilson's Rev. & Ann. St. 1903, provides:

"The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made: First, * * * second, * * * third, * * * fourth, for fraud, practiced by the successful party, in obtaining the judgment or order. * * * "

Section 564 of the same article, chapter, and volume (paragraph 4762) provides:

"The proceedings to vacate or modify the judgment or order, on the grounds mentioned in subdivision four, * * * shall be by petition, verified by affidavit, setting forth the judgment or order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On such petition, a summons shall issue and be served as in the commencement of an action."

It was under the authority and by virtue of the provisions of these statutes that this action was brought, and counsel for plaintiff in error argues that the following language, contained in the section last referred to: "A summons shall issue and be served as in the commencement of an action"—justifies the conclusion that, except a second summons was intended to be issued in the same action, this language would not have been used, and that this, taken in connection with a section of the divorce act to which we shall presently refer, makes it clear that a separate action was not intended. We are not able to agree with counsel on the matter. The language to our minds is as susceptible to one construction as another. It is at least indefinite on either. This language might

very reasonably be held to convey the idea that a separate action should be begun by reason of the fact that a summons should be issued, and should be served as in the commencement of an action. It will be noted that the section preceding this (paragraph 4761), which provides for a proceeding to correct mistakes or omissions of the clerk, etc., is brought by motion, and upon reasonable notice to the adverse party or his attorney in the action; and, in the section relating to the vacation or modification of judgments, such as the one under consideration here, it is provided that it shall be by petition, and, contradistinguished from the manner in which the opposing party is notified in the previous section under the one here involved, it provides a summons shall issue. The proceeding by motion is to effect a correction of mistakes, omissions, or irregularities, while the latter action involves a trial of the petition and judgment. The statute certainly is not clear upon the point raised by counsel. It does not specifically say in so many words that the suit shall be a separate suit, nor does it say that the petition shall be filed in the original suit. It will be noted that the petition in this case is entitled the same as in the original case, and when it was presented to the clerk of the court for filing, he gave it a separate number, but we can see no way whereby the defendant was prejudiced thereby, or wherein the proceedings would have been other than they were had the same number been given the new case as the old. The referee found that the proceeding was in the original action.

The first case counsel cites to sustain their position (*Corder v. Speake, supra,* from the Supreme Court of Oregon) was one wherein a divorce had been granted, and alimony had been allowed the wife, but not paid. She brought a separate suit to enforce the payment of this alimony, and the court held, by virtue of the statute, that this could not be enforced in a separate suit, the court saying:

"The statute authorizes the court, upon motion, to set aside, alter, or modify so much of a decree of divorce as relates to the maintenance of either party to the suit. Hill's Ann. Laws of Oregon, 1892, § 502."

Under this statute the court having full power by a simple motion in the original suit, it was held not to have jurisdiction in a separate suit, in the absence of any statute conferring it.

The other case (*Karren v. Karren, supra,* from the Supreme Court of Utah), was an action separate from the divorce proceeding which it involved, brought to set aside the decree of divorce; the decree awarding the children to the defendant, and praying for alimony and attorney's fees. Section 1212 of the Revised Statutes of Utah of 1898 provides that subsequent changes may be made, in a decree of divorce, by the court in respect to the disposal of the children or the distribution of property. Such changes must be applied for, and can only be granted in the action in which the decree of divorce was granted. We have no such statute in Oklahoma as the ones upon which either of the foregoing cases was decided. The nearest approach to it is section 640, art. 28, c. 66 (paragraph 4838) Wilson's Rev. & Ann. St. 1903, which reads as follows:

"When a divorce is granted, the court shall make provision for guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect, whenever circumstances render such change proper."

Under this statute we entertain no doubt that any change or modification, or any order in reference to the child, should be made on motion in the original action, but there is no specific limitation in our statutes requiring the action to vacate or modify a judgment or decree for fraud practiced in obtaining the same to be brought in the original action.

Another contention of counsel for plaintiff in error is that to the answer which was filed setting up new matter no reply was filed, and that the new matter thus pleaded should be taken as true. This question counsel raised in the lower court by motion for judgment on the pleadings, filed August 18, 1906, which was after the hearing of the cause by the referee, and on the same day the referee filed his report. This motion was overruled by the district court, and in our judgment no error was committed. The general rule in reference to the failure of a party to file a reply is

stated in Encyclopædia of Pleading & Practice (volume 18, p. 701) as follows:

"If the defendant voluntarily goes to trial without a reply, when he is not bound to do so, he thereby waives a reply, and is regarded as consenting to go to the proof of the answer as if it were denied; and, where a case is tried as if a replication had been filed and the evidence closed, it is error to instruct the jury that the allegations of new matter contained in the answer must be taken as true for want of a replication."

See, also, *Nooner v. Short,* 20 Kan. 624; *Cooper et al. v. Davis Sewing Machine Company,* 37 Kan. 231, 15 Pac. 235; *Hopkins et al. v. Cothran,* 17 Kan. 173.

Among the several purposes of pleadings is that of affording to all litigants in the cause notice of the facts upon which the other party relies to recover or defeat recovery. Defendant was entitled in this cause to have had a reply filed to the answer, but this right was one he could waive if so inclined, or if he believed he was sufficiently informed of the claims of plaintiff, and of her defenses to the new matter pleaded in the answer, to enter trial without a reply. This was a right which he had; but, after having exercised this right, and after having gone through the trial of the cause before the referee without a reply, he was not then entitled to raise the question of its absence, and have awarded to him a judgment on the pleadings on this account.

We now come to the actual merits of the controversy, which, to fully consider, becomes necessary to consider the findings of fact and conclusions of law made by the referee. They are substantially as follows, and for convenience the parties hereto will be denominated by the titles which they bore in the trial court:

On the 15th day of July, 1893, the plaintiff and defendant were married at Spokane, in the state of Washington, where they lived until 1898, at which time they removed to Oklahoma City, where they lived together until the date of the decree of divorce, June 16, 1904. A boy was born in 1896, and at the time of the hearing was 10 years of age. Mrs. Holt on her marriage to the defendant was about 19 years of age, and the defendant some 10

years her senior. The defendant was worth approximately $20,-000 when he moved to Oklahoma City. In 1889 he invested $12,-500 of it in the stock of the Western National Bank of that city, and prior to the date of the divorce increased this investment to the amount of $20,000, which stock was worth above par. He owned the same at the time of the decree of divorce and had in addition thereto about $4,000 in cash. The plaintiff was entirely inexperienced and unskilled in business, and brought to her husband no property, and had acquired none since. The defendant became cashier of the bank mentioned in 1899, and held that position all of the time involved in this controversy. Since the birth of her child the plaintiff had been in bad health, and a large part of the time frequently under the care of physicians, and in June, 1904, and for several months prior thereto, had been suffering from nervous difficulties, with a complication of other ailments, and occasionally subject to attacks of hysteria. The husband knew of his wife's condition, but refused to follow the suggestion of her physician by having a surgical operation performed for her relief. He provided his wife with a comfortable home and reasonably comfortable surroundings, but restricted her in her dress and living expenses, and for several years prior to the date of the divorce had ceased to conduct himself toward her in a manner that affectionate and dutiful husbands are accustomed to do, seldom being in her presence or society, except when necessary for his own convenience and comfort. During this period of time he repeatedly and constantly accused his wife of improper relations with other men, which accusations were groundless, by virtue of which she was rendered very unhappy, and the relation between them became strained and distant.

That portion of the referee's report relating to the procurement of the divorce, and the action of the defendant in reference thereto, is as follows:

"A few days before the 16th of June, 1904, the defendant stated to plaintiff that he did not intend to live with her any longer, that a separation was indispensable, and that, unless she would bring suit for a divorce and procure the same, he would bring

such a suit against her. He claimed to her to have evidence damaging to her good name and character which, if made public, would involve her in disgrace, and entail upon her infant son the shame and obloquy attending such a disclosure. He exhibited to plaintiff certain letters, which he claimed were written by third parties, and contained evidence reflecting upon plaintiff's character, and threatened that, unless plaintiff should follow his direction to bring the suit for divorce, he would pick up other evidence, even if it were necessary to employ detectives for that purpose, sufficient to accomplish his design to obtain a divorce. At the time these threats were made plaintiff's spirits were depressed by ill health, anxiety for the welfare of her child and for her own future, she was unaccustomed to and unfamiliar with the administration of justice in the courts, and did not know that the papers exhibited to her by the defendant were not legal and proper evidence, and she believed that the defendant would be able to carry out and accomplish his threats.

"The plaintiff was not fully informed as to the extent of defendant's property, the defendant was not accustomed to confide information to her as to his business affairs, and was constantly complaining to her that his fortune was diminishing instead of increasing, and that by reason of his poverty he was unable to provide her with luxuries ladies in her station of life are accustomed to enjoy. The defendant represented to plaintiff that he was largely in debt, and plaintiff was deceived by such representations. At the time that defendant suggested to plaintiff that she bring an action for divorce against him, he offered to give her, as her share of his property in lieu of alimony, $150 in cash, and $25 per month for a period of three years, to pay the expenses of her suit for divorce, and purchase her a home at whatever place she should select, the cost of which was not to exceed $2,000, and the title to which home should be conveyed to plaintiff with restrictions against selling or transferring same, to go to the child of plaintiff, Raymond J. Holt, upon the death of plaintiff, if she should die without other legitimate issue. The plaintiff, impelled partly by her desire to protect her reputation from disgrace and to shield her child from the consequences of such shame, and fearing that if she should decline the proposition made by defendant, he would carry out his threat to procure a divorce from her upon false evidence, and induced partly by the deceit practiced by defendant in misrepresenting to her the extent of his fortune, accepted the proposition made her by the defendant, and consented that the

defendant have the custody of their infant child, Raymond J. Holt, for a period of one year, after which time, the defendant represented to plaintiff, they could remarry if they so desired, and that if he found she had not been guilty of the improper conduct of which he had accused her, such marriage might be agreed to and consummated. The plaintiff did not promptly agree to the arrangement suggested by the defendant; but, after they had discussed the same for several days, her reluctant consent was given to this arrangement.

"For the purpose of carrying out the arrangement previously made with his wife, as set forth in the foregoing findings of fact, in the early part of June, 1904, the defendant consulted an attorney, B. O. Young, who was an acquaintance of the defendant, and a lawyer practicing in this court. The defendant acquainted Mr .Young with the nature of the business, informed him that he desired him to prosecute an action against himself, the defendant, on behalf of Mrs. Holt, for divorce, and that he (the defendant) would pay Mr. Young's fees for such service. Mr. Young consented to take the case, and afterwards the defendant took the plaintiff to the office of said Young and introduced her, after which he retired. Young, after having consulted with both the plaintiff and defendant, drew a petition to be filed in an action for divorce on behalf of the plaintiff, and an answer in the nature of a general denial, to be filed in the same action on behalf of the defendant. He also drew, under the direction of the defendant, a contract relating to the property rights of the parties, to be executed by the parties. He received no compensation from the plaintiff, and had no contract with her for such. He did not advise the plaintiff of her rights on the subject of alimony; indeed, he gave her no advice whatever touching the protection of her interests in relation to either her child or her property rights. The services of Mr. Young were rendered in the interest of the defendant, and not in the interest of the plaintiff, except to the extent of procuring the divorce, which at the time was the mutual purpose of both the parties.

"On the 16th day of June, 1904, the defendant, Frank R. Holt, having advanced to Mr. Young the cost deposit necessary to be made, Young filed with the clerk of the district court a petition for divorce, in an action in which Eva Holt was plaintiff and Frank R. Holt was defendant, which action was numbered on the dockets of this court, 4,542, and which petition was verified by the plaintiff, Eva Holt, and alleged that the defendant,

Frank R. Holt, had been guilty of conduct amounting to gross neglect of duty and extreme cruelty to plaintiff. At the same time, in the action Mr. Young filed an answer for Frank R. Holt, denying the averments of plaintiff's petition, and within an hour afterwards the case was called and tried by the court, and a decree rendered granting a divorce to the plaintiff, finding the defendant had been guilty of gross neglect of duty and extreme cruelty toward her, and awarding the custody of the minor child, Raymond J. Holt, exclusively to the defendant, and enjoining plaintiff from interfering with her said son or the defendant's custody of him, and providing that plaintiff might visit her son at all reasonable times. No evidence was introduced on the subject of the property rights of the parties, but it was represented to the court by Mr. Young, who appeared for the plaintiff, that the property rights had been settled by agreement, and upon such representations made to the court by Mr. Young the following judgment and order was made by the court in said decree, touching the subject of alimony:

"'It is further ordered, adjudged, and decreed that the said plaintiff have and possess for alimony the following property and money: All household furniture and fixtures and silverware owned by defendant; $150 in cash, and the further sum of $25 on the 1st day of July, 1904, and on the first day of each and every succeeding month until the expiration of three years from the 1st day of July, 1904. It is also further ordered and decreed that defendant buy and deed to plaintiff after one year, and before three years from this date, a house, home, or homestead to be located by plaintiff, and to cost not more than $2,000, or, if a less sum then plaintiff is to receive, the difference between such lesser sum and $2,000 in cash, which property is to remain the sole and separate property of plaintiff, and which she is not to sell, convey, nor incumber in any manner without the written consent of the defendant; and, in case of the death of the plaintiff without further issue born in lawful wedlock, then the homestead above mentioned shall descend to Raymond Jay Holt, son of the parties hereto.'

"After the decree of divorce had been rendered, and on the same day, the plaintiff left for the home of her parents in Spokane, Wash., her attorney, Mr. Young, accompanying her to the train. She left the furniture awarded to her by the decree of the court in the possession or control of the defendant, and left the child also in his control. After the decree had been rendered,

and before the plaintiff had departed from Oklahoma City, she went to the office of Mr. Young, and there met the defendant, at which time they both signed and executed the contract in writing, which is in words and figures as follows, to wit: ' [Then followed copy of a paper denominated a 'Property Division and Agreement,' which contained substantially the terms of the decree noticed above.]

"On the 16th day of June, 1904, and after the decree of divorce had been granted by the court, the defendant paid to the plaintiff $150 in money, taking her receipt therefor, and also purchased her ticket from Oklahoma City to Spokane, and gave her a small amount of money besides. The defendant has continued to make the monthly payments of $25 to plaintiff, according to the terms of the contract previously executed between them, and the plaintiff has continued to accept and use said money, which amount is not, and has not been, sufficient to pay the ordinary living expenses of the plaintiff, together with the medical attention and treatment her health has required. The defendant has advanced, outside of the terms of the contract, voluntarily, certain other sums of money to the plaintiff since their separation, amounting in all to about $500. These sums were paid at different times, and in different amounts, in the form of gifts, $100 being a Christmas gift at one time, and about $200 has been advanced to pay the expenses of the plaintiff at a hospital while she was undergoing a surgical operation and other treatment for her health. In February, 1906, the defendant executed to plaintiff a conveyance for a lot in Spokane, Wash., intended as a home for plaintiff, and for which defendant paid the sum of $2,700. The conveyance executed by the defendant to plaintiff contains the following limitation: 'This deed is given to fulfill a certain contract and agreement of property division, dated June 16, 1904, between Frank R. Holt and Eva Holt under condition of said contract this property is to be the sole and separate property of said Eva Holt and that said Eva Holt shall neither sell, transfer, nor incumber in any manner said property without the written consent of Frank R. Holt. And in case of the death of Eva Holt without further issue, born in lawful wedlock, the said property shall go by devise to Raymond Jay Holt, only son of the parties hereto. And said Eva Holt hereby agrees to accept said property and said allowance as full and complete settlement of all property rights between the parties hereto.' The plaintiff accepted the deed, took possession of the property, and has continued to

hold possession of the same until the present time. The plaintiff has not tendered back to the defendant any of the money advanced to her since her separation from him, and indeed she could not do so if she desired, for the reason that the money has all been expended.

"In 1905, more than a year after the decree of divorce had been rendered in the action hereinbefore described, the plaintiff, intending to persuade the defendant, if possible, to remarry her, and impelled to such a course by the desire to be near her child, left Spokane, Wash., for Oklahoma City, but, having run out of funds, stopped at Guthrie. She had wired the defendant from Newton, Kansas., of the time of her expected arrival at Guthrie, and requested him to meet her there. The defendant, upon receipt of the message, consulted Mr. Young in reference to the matter, and procured him to go to Guthrie and meet Mrs. Holt, directing him to prevent her, if possible, from coming to Oklahoma City. Young met the plaintiff at Guthrie, and, ascertaining that she was without money, communicated with the defendant, Holt, and afterwards paid the plaintiff's hotel bill. He advised her to go to Kansas City, and wait there for the defendant to bring the child, Raymond J. Holt, with him to Kansas City, promising the plaintiff that she could then visit with the defendant and the child. Mr. Holt advanced the necessary funds to pay the plaintiff's expenses upon this trip, under an agreement with the plaintiff and with Mr. Young that he should be reimbursed for such outlay out of the proceeds of the plaintiff's furniture, which was then in the possession of the defendant in Oklahoma City, and which the plaintiff agreed might be sold for the purpose of repaying the money advanced by the defendant. Afterwards Mr. Young sold the furniture to the defendant for a much smaller amount than it was worth, and repaid to the defendant, from the proceeds of the sale, the money advanced by him to the plaintiff. In this transaction Mr. Young acted entirely in the interest of the defendant, and, if he was under any obligation to the plaintiff, he wholly disregarded such obligation."

The balance of the findings relate to the child and its custody, a recitation as to the character of plaintiff, and a statement covering the issues presented by the petition, and it is not deemed essential to set the same out at length.

The conclusions of law found by the referee as afterwards

affirmed by the court in substance, held and provided that the court had jurisdiction of the action; that the petition did not constitute a separate action, but that the action was properly included in the original; that the attack upon the decree was not collateral, but direct; affirmed the divorce, and gave to the plaintiff a judgment for $5,000 in addition to that which she had already received. The title to the house and lot in Spokane was left as provided for under the decree and agreement. The custody of the child was left with the defendant, with right in plaintiff to visit.

The judgment entered in the lower court was in accord with the conclusions just noticed, and we are asked to reverse the same for several reasons in addition to the ones heretofore noted, which are indicated and set out in defendant's third and fourth paragraph to his answer as follows:

"(3) For further defense defendant says that plaintiff is estopped from maintaining her present cause of action, for that said plaintiff has continuously since said decree of divorce, and up to the present time, accepted all the benefits secured to her by said decree of divorce and said property division contract, and that she cannot deny the obligations thereof after and while receiving the benefits therein secured.

"For further defense defendant says that under and by virtue of the terms of said decree of divorce and property division contract, the plaintiff was entitled to receive a home, to cost not more than $2,000, at some place to be selected by her, upon the conditions named in said decree and contract, and defendant further says that on the ———— day of February, 1906, the plaintiff, having heretofore selected a residence costing the sum of $2,700, requested this defendant to procure the same for her, and that this defendant did procure said residence for said plaintiff, and did pay therefor the sum of $2,700, and that plaintiff accepted the same, including said additional amount of $700, as full settlement of all claims or demands which the plaintiff had against the defendant on account of alimony or property division, and that plaintiff accepted a deed from the said defendant expressly containing such recitals, a copy of which deed is hereto attached, marked 'Exhibit A,' and referred to as a part of this answer."

The portion of the deed to which reference is made in the fourth defense is set out in the referee's findings, *supra.*

It is to be observed that the decree of divorce granted is not assailed; that plaintiff in her petition seeks a modification of the decree making allowance for alimony and to secure the custody of the child only. In the third paragraph of defendant's answer it is sought to plead and secure for defendant the benefit of an equitable estoppel against plaintiff, so far as additional alimony is concerned, by reason of the fact, as is averred and admitted, that she had accepted the benefits secured to her by the decree, and under the property division contract; and it is urged that she could not deny the obligations thereof after and while receiving the same. Counsel for defendant in error insist that the acts pleaded are not sufficient to constitute an equitable estoppel, and we are inclined to agree with them. 2 Pomeroy's Equity Jurisprudence, §§ 804-805; *Brigham Young Trust Co. v. Wagener,* 12 Utah, 1, 40 Pac. 764; 8 Ency. P. & P., pp. 10, 11.

The definition and the essential elements constituting equitable estoppel are defined and stated by Mr. Pomeroy, *supra,* to be as follows:

"Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy. * * * There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him. The conduct must be done with the intention, or at least with the expectation, that it will be

acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. He must in fact act upon it in such "a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his con- duct and to assert rights inconsistent with it."

It is not only essential, when a party desires to avail himself of such an estoppel, that these elements exist; but, in order that he may be entitled to prove and thereby enjoy them, it is neces- sary that he plead them with particularity, and that his plea set out all of the elements necessary and essential to constitute either a cause of action or a defense. *Deming Investment Co. v. Shaw- nee Insurance Co.,* 16 Okla. 1, 83 Pac. 918, 4 L. R. A. (N. S.) 607; *Tonkawa Milling Co. v. Town of Tonkawa et al.,* 15 Okla. 672, 83 Pac. 915; *Trover et al v. Dyar, Commissioner of Drain- age,* 102 Ind. 396, 1 N. E. 728; *Sharon v. Minnock,* 6 Nev. 377.

In the case of *Tonkawa Milling Company v. Town of Tonka- wa, supra,* in the third paragraph of the syllabus, the court says:

"An estoppel must be pleaded in order to enable a party to avail himself of it on the trial, and must be pleaded with partic- ularity, in order to constitute either a cause of action or defense."

To the same effect is the holding of the Supreme Court of Indiana in the case of *Troyer et al. v. Dyar, Commissioner of Drainage, supra:*

"No intendments are made in favor of a plea of estoppel, but it is incumbent upon the party pleading it to aver all the facts essential to its existence."

In the case of *Sharon v. Minnock, supra,* from the Supreme Court of Nevada, the court said:

"In pleading facts to show an estoppel *in pais* it is necessary to set forth every essential element of such an estoppel, and, among other things, that the party relying on it was influenced in his conduct by the acts or silence of the other."

In the answer filed in this case there is no averment of any kind or character that defendant was in any wise misled by the

acts, statements, or doings of plaintiff. So far as his answer shows, during all of the time that he was remitting the monthly installments, and otherwise carrying out the property division contract and the decree granting alimony, he knew that his wife was receiving the same, and was using them with the intention at all times to begin this action. There is no allegation that defendant was misled or induced to act differently than he otherwise would by reason of the doings of the plaintiff. On this proposition the Supreme Court of Nevada in the case last cited said:

"That the person relying upon an estoppel was induced by the conduct of another to act differently from what he otherwise would have done is a constituent element of an estoppel *in pais*, and there is no estoppel when such is not the case. What follows? That such fact must be made to appear by the pleading. If it be an essential element of estoppel, it is necessary to plead it. If not pleaded, although the other essential facts were set out, no estoppel would be made out. * * * How is the court to know that he would not have taken precisely the same course he did, even with a full knowledge of the claim of the plaintiff's grantors? There is no direct allegation from which that conclusion can be drawn; and, even if there be allegations from which such conclusion could be arrived at *arguendo,* still that would not avail, for argument by the court to whom a pleading is submitted is not pleading. We conclude, then, that as the estoppel *in pais* relied on by the defendant was not sufficiently pleaded, or rather as the facts alleged do not constitute such estoppel, no proof could properly be admitted under it."

So in our judgment in this case the defendant has not by his pleadings brought himself within the rule entitling him to the benefits of an equitable estoppel against the plaintiff. The sufficiency of this pleading was not assailed in the court below, and the entire case it appears was tried upon the theory that this was a sufficient plea of estoppel. Likewise it is briefed in this court upon the same theory. Hence, in view of the importance of the controversy, and the vigorous insistence made by counsel for plaintiff in error, we deem it fit and proper to examine the question, and to say whether or not in fact Mrs. Holt was actually estopped and concluded by her acts from prosecuting this action.

Counsel for plaintiff in error cite numerous authorities to sustain their contention. The leading ones, and those which in our judgment are relied upon by them with most confidence, are as follows: · Julier et al. v. Julier, 62 Ohio St. 90, 56 N. E. 661, 78 Am. St. Rep. 697; Scott v. Walton et al., 32 Or. 460, 52 Pac. 180; De Hereu v. De Hereu, 6 Ariz. 270, 56 Pac. 871; Ellis et al. v. Ellis, 55 Minn. 401, 56 N. W. 1056, 23 L. R. A. 287, 43 Am. St. Rep. 514; Baily v. Baily, 44 Pa. St. 274, 84 Am. Dec. 439; Miltimore v. Miltimore et al., 40 Pa. St. 151; Champion v. Woods, 79 Cal. 17, 21 Pac. 534, 12 Am. St. Rep. 126; Ellis v. White, 61 Iowa, 644, 17 N. W. 28; Mohler v. Shank, 93 Iowa, 273, 61 N. W. 981, 34 L. R. A. 161, 57 Am. St. Rep. 274; Karren v. Karren, 25 Utah, 87, 69 Pac. 465, 60 L. R. A. 294, 95 Am. St. Rep. 815. We will briefly review them.

The case of Julier v. Julier, supra, was commenced in 1897 by Jane Julier against the heirs of George C. Julier, to whom she was married in 1856, and from whom she had secured a divorce in 1888, to establish her dower right in certain lands owned during the coverture. The divorce decree was pleaded in the answer; alimony was allowed therein, and, it was averred, paid to plaintiff in lieu of her dower rights. This payment was admitted by the reply, and its force sought to be broken on the ground that the court was without jurisdiction to release the dower. No fraud is charged against the defendant or his ·attorney, nor any collusion with the attorney for plaintiff in the divorce suit. Plaintiff was denied relief.

The case of Scott v. Walton et al., supra, was one wherein there was involved a transfer or trade of several different tracts of land between two men, on the facts of which the court held relief would not be granted plaintiff. No fact approaching the class involved here was in the case.

The case of De' Hereu v. De Hereu, supra, was one wherein a divorce was procured by the husband on service by publication in Arizona, in April, 1882. The next year plaintiff married another wife, who at the time of the trial of the reported case was

still living, one child having been born to them, who was at that time 11 or 12 years of age. The divorced wife, soon after the husband's second marriage, learned of the divorce, and through agents procured the service of an attorney to settle and compromise all claims which she had in and to the community property. This was accomplished by a petition being filed in the same action, and having the sum of $5,000 awarded to her in a second decree. Three thousand dollars was paid in cash, and two notes of $1,000 each given for the balance. In 1897 the first wife filed an action in the district court assailing both of the decrees previously entered, alleging them to be void. There is no allegation or proof in this case of fraud, deception, or duress, and the court on these facts said:

"After the entry of a decree of divorce on defendant's default defendant obtained a modification of the decree, whereby she was given a portion of the community property in consideration of the former decree being permitted to stand. Held, that defendant was estopped from questioning the validity of the decree of divorce 15 years after its entry, and after plaintiff had remarried."

The case of *Ellis v. Ellis, supra,* was one wherein Rachel Ellis sued Matthew Ellis for divorce and alimony, decree in which was rendered in 1884. The divorced husband remarried, and he and his second wife lived together until the date of his death, 1892. His widow was appointed his administratrix, and the reported case grows out of a contest filed by the divorced wife, who sought to procure a portion of the deceased husband's property, and, on being met by the decree of divorce, pleaded that she was induced to bring it on account of persuasion, ill treatment, and threats of her husband. The court held that the divorce decree could not be thus attacked in a collateral suit.

The case of *Baily v. Baily, supra,* was one wherein a husband had procured a divorce. His wife filed an appeal. During the pendency thereof she brought an action of replevin against her former husband as a *femme sole,* and this action on her part was pleaded in the appellate court to dismiss her appeal in the divorce suit. The appeal was dismissed by reason of the fact that she,

not being qualified as a married woman to maintain in her own name the replevin action, had by the voluntary, legal assertion on her part of the right to sue in her own name estopped herself to prosecute an appeal in a divorce action. In other words, she could not both act under the decree and repudiate it, and the court simply accepted the election.

The case of *Miltimore v. Miltimore, supra,* was one where the parties were married in 1822. In 1849 the wife secured a divorce. In 1856 her husband died. Prior to his death he conveyed an undivided two-thirds of his real property to the defendants in this action. The wife sued grantees for dower and on its being pleaded sought to avoid the force of the decree of divorce on the ground of irregularity in its procurement. The court held that she was estopped by her own acts.

The facts and the holding of the court in the case of *Champion v. Woods, supra,* are sufficiently stated in the syllabus of the court as follows:

"Plaintiff, in an action for divorce from her husband, alleged in her complaint that there was no common property, and the decree made no reference to any. For 16 months prior thereto she had not lived with him. Three years and a half later, and after his death, she brought this action against his estate to recover her share of the community property, alleging that she was ignorant of the law, and had always relied upon her husband's statements, and that he had 'systematically and persistently, during all the time of their residence in California, continuously represented, declared, and asserted to plaintiff that the property he owned, and had acquired since said marriage, was his sole and separate property.' Held, that equity would give her no relief."

The court in this action placed no credence in the assertion of the love and affection on the part of the wife for her deceased husband, and of his influence over her, when as a matter of fact she had been unable to live with him for 16 months before she begun her action for divorce.

The case of *Ellis v. White, supra,* was another action for dower in the lands of the deceased husband bought by the wife,

who had procured a divorce. The court denied relief by reason of the plaintiff's failure to sustain her cause, and held in the syllabus:

"The evidence in this case failing to sustain the · plaintiff's claim that she did not authorize the institution of divorce proceedings, or that she was not competent, by reason of insanity, so to do, the decree of divorce passed therein must be held binding on her."

The case of *Mohler v. Shank, supra*, was another suit where, after the decree of divorce had been granted, the divorced husband died, and an effort was made on the part of the divorced woman to secure a portion of his estate. The court held that, although the divorce was void, yet where she had accepted the alimony under the decree, and had, eight years before the death of her husband, contracted a subsequent marriage, she was estopped to make a claim as his widow for a share of his estate. In this case, during the 19 years the husband was incarcerated in an insane asylum, and before her second marriage, she gave birth to an illegitimate child. The suit for divorce was brought by the husband's guardian, decree for alimony entered by consent, and she was again married. The court denied relief, and held the claimant estopped, notwithstanding the void character of the decree.

The controlling facts in the case of *Karren v. Karren, supra,* are stated in the first paragraph of the syllabus as follows:

"A woman who consented to a decree of divorce against her to enable her husband to obtain a grant of property cannot, after her husband had married another woman, have the decree annulled, although, in consideration of her consent, he promised to remarry her after the grant was procured, and the decree was obtained by ˌsuppression of facts, and false testimony."

The mere statement of the bare facts in the foregoing cases, it occurs to us, will be sufficient to manifest their inapplicability to the case at bar. In practically all of them the attack which was made upon the decree in question was collaterally made; in most of them after the expiration of many years, and long after one or the other of the parties had either died or remarried. None of these conditions is present in the case at bar. But a little over half of the time to be covered by the contract and the decree had

expired when Mrs. Holt assailed it by filing this action. Neither of the parties have remarried, nor is it a contest with the heirs of the defendant over his estate. It is a direct attack in the same court, and, for all practical purposes, in the same action, and a challenge to the husband in his lifetime to meet her upon the proposition that he had despoiled and defrauded her by his overreaching methods in securing the contract and decree in question. This situation presents a condition entirely dissimilar from that presented in any of the cases relied upon by counsel for defendant.

However, let us inquire and ascertain whether or not plaintiff is either estopped by her acceptance of the allowance made her under and by virtue of the contract and decree, and whether or not, in order to qualify her to challenge the same in a court of equity, she is required to first return to the defendant the money which she has received from him under it; also whether her acceptance of the deed to the house in Spokane, containing the terms that it did, effected a confirmation of the contract, and a ratification of the decree. Counsel for plaintiff call our attention to, and quote from, section 642, art. 28, c. 66, par. 4840, Wilson's Rev. & Ann. St. 1903, as follows·

"A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of the party whose fault it was granted in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party."

This statute is relied upon by counsel to establish and create an exception in divorce decrees, which he contends leaves them practically open to attack for and on account of fraud to an extent greater than in ordinary actions. By an analysis of the section it will be seen that it is the unsuccessful party who shall have the benefit of it, on account of fraud committed by or on behalf of the successful party. This necessarily raises the question, in a case of this character, of whether or not the plaintiff or the defendant was the successful party; whether or not the one in whose favor the judgment of the court was apparently rendered would be termed such successful party. At first blush this would appear

to be the correct construction of this language, but when we take the findings of fact in the case, and find therefrom that the bringing of this action was not on account of the wish of the wife, but that it was imposed upon her by her husband; that it was not his plan that he should bring the suit in his name, but it was his purpose that she should appear as plaintiff and take the decree— is it not easily apparent that he was the successful party? Let us see. He wanted to be divorced, not she. He was anxious to succeed in effecting this result. To bring this about he employed an attorney, not to bring an action for himself, but to bring an action against himself; not to procure a judgment in his behalf, but to have a judgment rendered against him. The wife employed no attorney, and wanted none; she had no counselor, and procured none. The defendant in this case, with his own lawyer, put his wife forward in his place as plaintiff in the court, and, to secure his ends and attain his wishes, used his lawyer to secure for her, against him, this decree. He succeeded in securing to himself all he desired in the action and just as he desired. We submit that he, in a case of this character and under conditions of this nature, is properly denominated the successful party. If fraud was perpetuated by him in such an action, then notwithstanding the fact that she against whom it operated was nominally the successful party, in fact and in truth the defendant was, and, for and on account of his fraud under this statute, the judgment may be assailed, and be no bar to the defrauded party for a righteous claim in and to the property of the other.

Two cases, while not precisely in point, are instructive on this proposition: *Cole v. Richmond Mining Co.*, 18 Nev. 120, 1 Pac. 663, and *Olmstead v. Olmstead*, 41 Minn. 297, 43 N. W. 67. In the case first cited the court, speaking in the syllabus on the question as to whether or not a party was the successful party, says that it "depends upon the particular facts of the case and that, under certain circumstances, a litigant may be successful, if he gains substantially everything of the value involved in the controversy, without winning everything that is asked for." The oth-

er case (*Olmstead v. Olmstead*) was similar to the case at bar, in that the husband employed an attorney to bring a divorce suit, with his wife as plaintiff, against himself. Suit was filed and was tried, and a divorce granted to her as in the case at bar. Within 10 days after the entry of judgment, the defendant married, yet, notwithstanding that fact, the court set aside the decree, for the reason as it said:

"It could not be tolerated that a party, anxious to secure a divorce, should bring about a judicial separation by an action against himself, and commenced and managed by himself, in his own interest, using his wife as a mere figurehead."

If the foregoing declaration is sound, then the court, under this statute alone, in this cause, provided fraud is established, is possessed of jurisdiction and power, equal to that of the court in the original cause, to deal with the property rights between these parties. To our minds this construction is reasonable.

The union out of which grows the marriage relation is different from every other species of contract into which humanity enters. It is entered into in the eyes of all people for the mutual lives of the parties. None anticipates divorce on entering it. No expectation thereof or arrangement therefor is provided. The union so effected is spoken of as a journey together for life. Out of the relationship grows the family, the most important single element sustaining modern civilization. Divorce is the death of this sacred relationship. This union and relationship is predicated upon love, affection, and confidence, the tenderest ties which bind humanity together. The law of the land and morality enjoins upon the parties loyalty to, and forbearance with, each other. Confidence, reliance, and trust are encouraged, and by reason of these conditions the parties are, when one of them proves recreant, most easily imposed upon, overpersuaded, and wronged. In order that these necessary conditions out of which a happy fireside clime may evolve shall exist, and confidence and trust be freely bestowed, the law looks with a jealous and watchful eye on contracts between the parties, and guards with a tender solicitude the rights of the weaker when discord enters and dissolution impends. In

consequence thereof the rule is thoroughly established that, wherever such relationship exists, undue influence, or rather the ability to exercise undue influence, is implied by virtue thereof; and, while neither equity nor the law denies the possibility of valid transactions between the parties, yet whenever one of the parties obtains a possible benefit from a mutual transaction, equity raises a presumption against its validity, and casts upon the party asserting it the burden of proving affirmatively his compliance with equitable requisites to thereby overcome the presumption; and the court will not allow any transaction between such parties to stand when assailed, unless there has been the fullest and fairest explanation and communication between them, and absolute good faith and fairness in the party who seeks to establish the contract with the person so trusting him. Pomeroy's Equity Jurisprudence, §§ 955-956.

To the same effect is the declaration of Mr. Cooley in his great work on Torts (3d Ed.) vol. 2, c. 17, p. 972:

"The most confidential of all the relations of life is that of husband and wife. For reasons which are interwoven with the whole framework of civilized society the law is specially careful and vigilant in guarding and protecting the confidence which this relation invites and inspires. * * * The common law supposed the wife to be largely under the coercion of the husband, and, though this, so far as her property interests are concerned, is no longer a legal presumption, still the existence of some degree of marital influence may always be supposed; and, if the husband is inclined to deal unfairly with his wife, this influence, and the confidence begotten of the relation, will give him special facilities for the purpose. This relation is consequently of high importance when fraud or unfair dealing by the husband with the wife's interests is alleged, and may justly call upon the courts to criticise closely their negotiations. 'The law certainly does not prevent persons in this confidential relation from doing without urgency, of their own accord, and under the natural impulses of kindness and affection, such generous acts as are the results of mutual confidence and good will. But the same principle which encourages confidence protects it, by preventing any profit to be gained from abusing it. The law recognizes the fact that a married woman

is easily subjected to a species of coercion very much more effectual than any ordinary operation of fear or fraud from strangers. It has always been found necessary to examine jealously into all transactions whereby the husband gets an advantage over his wife not plainly spontaneous on her part. Any undue advantage gained by the use of the marital relation is a legal fraud on the wife which courts of equity will not allow to stand to her prejudice.' "

In the case at bar, in addition to the fiduciary relationship existing between the parties, which, as we have seen, afforded a ground for subjecting the contract to special scrutiny, and placed the burden upon its defender to show its fairness, the findings of the referee disclose the plaintiff was subject to the undue influence of the defendant, and that this influence was exercised upon her and by reason thereof, the contract and decree were secured. Whenever this fiduciary relationship or undue influence, either one or both, are made to appear in any case, and an inadequate or hurtful contract is entered into by virtue and under the operation thereof, the injured party by timely, proper action, will always be given relief. Such is the law as declared by law writers and courts in as many cases as the situation has presented itself. We submit a few: 21 Cyc. p. 1301; Pomeroy's Equity Jurisprudence, §§ 951, 955, 956; *Meldrum v. Meldrum,* 15 Colo. 478, 24 Pac. 1083, 11 L. R. A. 65; *Cheuvront v. Cheuvront et al.,* 54 W. Va. 171, 46 S. E. 233; *Executor of George Farmer v. Farmer et al.,* 39 N. J. Eq. 211; *Thompson v. Lee,* 31 Ala. 292; *Voltz v. Voltz,* 75 Ala. 555; *Kyle v. Perdue,* 95 Ala. 579, 10 South. 103; *Willetts v. Willetts,* 104 Ill. 122; *Dunn et al. v. Dunn,* 42 N. J. Eq. 431, 7 Atl. 842; *Simpson v. Simpson's Ex'rs* (Ky.) 23 S. W. 361; *Daniels v. Benedict et al.* (C. C.) 50 Fed. 347; *Witbeck v. Witbeck,* 25 Mich. 439.

Under the foregoing authorities independent of the divorce statute, there can be no question of the right of Mrs. Holt to recover if not precluded by the other objections urged. These are comprised in two questions which remain for consideration. The first is whether or not this suit is one for rescission within sections 98, art. 5, c. 15, par. 827, Wilson's Rev. & Ann. St. Okla. 1903,

providing for rescission. Counsel for appellant contends that it is, and that Mrs. Holt could not retain the money and benefits of this contract and decree, and at the same time litigate to secure more, but that, prior to the beginning of her action, in order to qualify her to maintain it, it was necessary that she restore to Mr. Holt, or offer to restore, all that she had received. We are not able to agree with counsel on this contention, for several reasons. Primarily this is not strictly an action for rescission; the foundation of it not being the contract, and the decree for property entered thereunder, but the antecedent rights which plaintiff had in the community property and estate of her former husband by virtue of having been his wife. The contract under which she received any portion of the sum is merely incidental to the trial of this cause. The plaintiff in her petition set up that the same was inequitable and unfair, and was procured by virtue of the confidential relationship existing between them, and on account of the undue influence defendant exercised over her. When these conditions were shown to exist, the burden was then placed upon the defendant to show that the contract was free from equitable or legal taint. The plaintiff's contention was that she was entitled, not only to all that the contract gave her, but to a great deal in excess thereof. The defendant admits that she is entitled to all that she has received, but insists that she is not entitled to any more. If he succeeds, then she will keep what she has, and will get that only, and be restricted to it; but, if she succeeds, she will not only be entitled to keep what she has, but will get more, so why should it be returned or tendered? In the view thus presented it is our judgment that it was not necessary for her to either bring into court and tender back to the defendant, nor even to formally express a willingness to do so, for the court with both parties before it could do equity between them. Moreover, the referee finds specifically that the plaintiff could not have tendered this money back for the reason that the same had all been expended, and that the amount so paid was not sufficient to pay the ordinary living expenses of plaintiff, together with the

medical attention and treatment her health required. It is thus seen that her actual necessities compelled her to accept and use this money, and the fact that on this account she received the money, and neither paid nor tendered it back, will in equity, considering the relationship of the parties, constitute neither an estoppel, nor a confirmation of the contract.

A case in which this principle appears to be involved is that of *Kyle v. Perdue, supra.* In that case an old woman in feeble health conveyed all of her property to certain business men for an inadequate consideration. She reposed confidence and trust in the grantees, and was imposed on and misled by them. On suit being brought by the parties to establish their title, she defended on the ground of certain alleged representations made to her at the time she signed the conveyance, urging an agreement that they were bound to support and maintain her through life, when in fact the contract showed them bound only to apply the surplus income of her own property, after payment of repairs and taxes, to her support. She had accepted from the grantees money and supplies in accordance with their contract, and it was urged on the trial that by accepting the same she thereby ratified the invalid instrument. The court in answering this contention said:

"It is plain that she had no intention to ratify it. She was asserting its invalidity in the courts. Her adversaries, by the active assertion of their claim, had succeeded in cutting her off from the enjoyment of the income from her property. She received their contributions toward her support during the pendency of this suit, and while she was under the stress of want, caused by the withdrawal of her accustomed means of livelihood. On one of the receipts which was presented for her signature she wrote, 'I take this money because I am starving.' Receipts given in such circumstances are entitled to no weight as evidence of a free consent to confirm the voidable transaction. The evidence by no means shows that the alleged acts of ratification were free, voluntary. and well understood."

The foregoing language is entirely applicable to the case at bar. Every sentence of it might be repeated and applied to the admitted, undenied, and undisputed facts in this case. While

Mrs. Holt was receiving money under this contract, and while it was being paid to her, as found by the referee, she was asserting its invalidity in court. Her adversary, by his course of conduct toward her, had cut her off from the enjoyment of the support and home to which he pledged her at the time of their marriage. She received his contributions toward her support during the pendency of this suit, and while under the stress of want caused by his withdrawal from her of her accustomed means of livelihood. Money and support derived, taken, and accepted under such conditions will estop no one, and the defendant occupies no position to demand that, prior to plaintiff being heard, she shall tender or restore to him money so paid and received.

To the same effect see the case of *Cheuvront v. Cheuvront et al., supra,* where the court says in the syllabus:

"While it is a general rule that, where a party seeks to cancel a contract for fraud in its procurement, the plaintiff must allege and show himself eager, ready, and willing to place the other party to the contract in *statu quo,* yet in case of a wife who sues to annul a contract of separation, and settling property rights between her husband and herself, where it is alleged that the execution of the contract was procured from her by false and fraudulent representations of defendant and his agent, falsely representing that it was the purpose of the defendant to live with and support the wife, and the object of the contract to reconcile and restore their marital relations, and it sufficiently appears from said bill that plaintiff is not able to repay the money given her by the defendant to induce her to execute the contract, held, not error to overrule the demurrer to the bill."

In the discussion of this proposition the court in that case says:

"A party who seeks to cancel a contract of sale because of mutual mistake must allege and show himself prompt, eager, ready, and willing to place the other party to such contract in *statu quo.* As a general proposition of law, this is correct. It is the general rule, where the transaction is purely of a commercial nature, or solely applies to property rights, that a party proposing to rescind a contract should place his adversary in *statu quo.* * * * This form of contract, and the cases upon which it is based, are

all of the nature of the sale of property, where no other questions are involved than those of money and property rights. This doctrine has been carried so far, and properly, perhaps, that even where the plaintiff is unable to restore that which he had received under the contract, from misfortune or otherwise, a court of equity will refuse to grant him relief; but the contract or deed sought to be canceled in case at bar is of a very different character. It is a contract made between parties sustaining the most sacred and confidential relations to each other known to civilization. It sufficiently appears from the bill that the plaintiff was unable to restore to the defendant the $400 received by her upon the execution of the contract. The relations of the parties were such that it was the duty of the defendant to assist the plaintiff, and it clearly appears that he was amply able to perform his whole duty in that regard, and to require the plaintiff to return the defendant the $400 before she could be heard upon her complaint to set aside the alleged fraudulent contract would be simply a denial of justice to her."

The foregoing reasons and authorities, it seems to us, justify our holding plaintiff absolved of any duty to restore or tender to defendant the money received and applied by her under the contract and decree.

The other question is, Did the plaintiff confirm the contract when, in accordance with its terms, she accepted from the defendant a deed for property in Spokane, in which deed defendant, executing it, had previously written the language which we have quoted in the referee's findings. Under the contract and decree defendant was to furnish a house or home to be selected by plaintiff to cost not more than $2,000, or for a lesser sum, the difference to be paid in cash. This property, as is seen, the plaintiff could neither sell nor incumber in any manner without the written consent of defendant, and in the case of the death of plaintiff, without lawful issue, then the property descended to their son. Such were the requirements on the part of the defendant of the plaintiff in reference to this property. Defendant pleaded in his fourth defense that the terms contained in the deed were by agreement. Upon this there is no finding whatever, as will be noted by the findings of the referee, further than a recital of fact that the

defendant executed a conveyance of property to the plaintiff, and that the same cost $2,700, that the deed contained the recitation above mentioned, and that plaintiff accepted the deed, took possession of the property, and has continued to hold the same. The observations which we have made in reference to the question of estoppel and rescission in our judgment are nearly, if not entirely, applicable to the condition presented by the acceptance of the plaintiff of the deed to this property, even though the same was taken, and these terms written in by agreement. If they were, then the question of the confirmation thereof depends upon whether or not the original undue influence was still exercised, or if the act of acceptance of the deed was merely a continuation of the former transaction, or if the plaintiff wrongfully supposed the original contract to be binding, or lacked full knowledge of her own rights—if these conditions existed, then there was no confirmation.

The proposition is well stated by Mr. Pomeroy in volume 2 of his work on Equity Jurisprudence, § 964, as follows:

"Where a party originally had a right of defense or of action to defeat or set aside a transaction on the ground of actual or constructive fraud, he may lose such remedial right by a subsequent confirmation, by acquiescence, and even by mere delay or laches. Wherever a confirmation would itself be subject to the same objections and disabilities as the original act, a transaction cannot be confirmed and made binding; for confirmation assumes some positive, distinct action or language, which, taken together with the original transaction, amounts to a valid and binding agreement. In general contracts which are void from illegality cannot be ratified and confirmed; contracts which are merely voidable, because contrary to good conscience or equity, may be ratified, and thus established. If the party originally possessing the remedial right has obtained full knowledge of all the material facts involved in the transaction, has become fully aware of its imperfection and of his own rights to impeach it, or ought, and might, with reasonable diligence have become so aware, and all undue influence is wholly removed, so that he can give a perfectly free consent, and he acts deliberately, and with the intention of ratifying the voidable transaction, then his confirmation is binding, and his remedial right,

Vol. 23—43

defensive or affirmative, is destroyed. If, on the other hand, the original undue influence still remains, or if the act is simply a continuation of the former transaction, or if the party wrongly supposes that the original contract or transaction is binding, or if he has not full knowledge of all the material facts and of his own rights, no act or confirmation, however formal, is effectual. The voidable nature of the transaction is unaltered."

It is to be noted that the term provided in the contract had not expired; that the plaintiff was still receiving, and defendant was still making, the remittance of $25 per month under its terms, and that it was during the existence of the contract in all of its elements, and while both parties were still acting under it, that this deed as made. Considering, then, these circumstances, and viewing the condition of the parties as shown by the findings of the referee, it is our conclusion, when the terms of the deed itself are considered, that there was no confirmation of the contract and decree such as to preclude her from assailing them. When we consider that there is no finding upon which to predicate the conclusion that the terms of confirmation written in the deed were placed there by and with the consent of plaintiff, we are not able to conclude that the mere acceptance of the house or home from her former husband, although it cost $2,700, when he was bound to purchase one at a cost of $2,000 only, was an act in itself sufficient to indicate that she "had obtained full knowledge of all the material facts involved in the transaction, had become fully aware of its imperfection and of her own right to impeach it, or ought and might, with reasonable diligence, have become so aware, and all undue influence was wholly removed, so that she could give a perfectly free consent, and that she acted deliberately, and with the intention of ratifying the voidable transaction."

We have been given by counsel in this cause the benefit of ample briefs and an oral argument. In addition to this the importance of the matter has prompted us to make an extended independent investigation for such light as the authorities at our hand afforded us; the propositions presented by the record have had our solicitous consideration, and we conclude from it all that

the judgment and decree of the district court is without error, and it is accordingly affirmed.

All the Justices concur.