### BECKMANN v. BECKMANN.

1. DIVORCE—DOMICILE—EVIDENCE—SUFFICIENCY.

 In proceedings for divorce brought by the husband, testimony as to plaintiff's domicile, while not very satisfactory, *held*, sufficient to sustain the conclusion reached by the circuit judge that he had been domiciled in Michigan for two years, and that the case was properly brought in this State.

2. SAME—DESERTION—ELEMENTS.

 To make out a case of desertion there must be satisfactory proof of three things: Cessation of cohabitation, an intent in the mind of the defendant to desert, that the separation was against the will of the plaintiff.

3. SAME—GOOD FAITH—EVIDENCE—SUFFICIENCY.

 Where plaintiff left defendant against her will, and afterwards wrote her asking her to come to him and resume marital relations, but a perusal of the correspondence is convincing that said offer was not made in good faith, but was made for the sole purpose of obtaining ground upon which to base an action for divorce, *held*, that plaintiff is not entitled to relief upon the ground of desertion.

4. SAME—HUSBAND'S ARREST FOR NONSUPPORT—EXTREME CRUELTY.

 Where plaintiff left defendant against her wishes and without just cause, and defendant had no funds available with which to pay the board of herself and child, statements made by her to the public authorities which resulted in plaintiff's arrest and conviction for nonsupport, *held*, not to constitute extreme cruelty within the meaning of our statute.

5. SAME—EXTREME CRUELTY—CHARGES OF NONSUPPORT.

 Charges of nonsupport or abandonment, made by a wife against the husband, in order to constitute extreme cruelty, must not only be false, but also malicious.

6. SAME—EVIDENCE—BURDEN OF PROOF.

 Where the record is convincing that the plaintiff has not sustained the burden of proof necessary to obtain a di-

---

On refusal of wife to follow husband on change of domicile, as desertion, see note in 4 L. R. A. (N. S.) 145.

On failure to furnish support as ground of divorce or separation, see notes in 29 L. R. A. (N. S.) 618, and 43 L. R. A. (N. S.) 255.

On separation as grounds for divorce, see note in 49 L. R. A. (N. S.) 1034.

vorce upon the grounds alleged, desertion or extreme cruelty, and it appearing that the defendant at no time has desired a divorce, the decree of the court below in favor of plaintiff will be reversed, and the bill dismissed.

Appeal from Genesee; Black (Edward D.), J. Submitted February 10, 1920. (Docket No. 111.) Decided April 10, 1920.

Bill by Frank H. Beckmann against Julia A. Beckmann for a divorce. From a decree for plaintiff, defendant appeals. Reversed, and bill dismissed.

*William V. Smith,* for plaintiff.

*A. J. Michelson* (*John A. Larimore,* of counsel), for defendant.

STONE, J. The bill of complaint herein was filed February 8, 1919, by the husband, to obtain a divorce from the wife upon the grounds of desertion and extreme cruelty. The parties were married at Menominee, Wisconsin, on June 11, 1910. At that time defendant was a physical training teacher, and plaintiff was a student. The parties lived at various places in the States of Washington, Utah and California until about June, 1913, when the plaintiff entered the employ of the Beaver Board Company as a traveling salesman. The early relations of the parties seem to have been reasonably pleasant. The only child of the parties, Robert, was born on July 13, 1914. He is living with the defendant at Minneapolis, Minnesota.

In May, 1915, the plaintiff was by his employer transferred to the Minneapolis office of said company, and the parties then took a furnished apartment in that city. After occupying the apartment for a short time they took rooms and boarded with Dr. and Mrs. Saucier in that city. Defendant's claimed reason for

moving was, that the apartment was not a suitable place for the child. Plaintiff testified that the reason given by defendant was that she did not have time to take care of the apartment and the child also. The parties lived together at Dr. Saucier's until December 9, 1915. The defendant testified that she began to notice that plaintiff was indifferent toward her and the child, staying at home as little as possible, and that on several occasions, upon returning to the city from business trips, he stayed at a hotel instead of coming home.

Dr. Saucier testified that plaintiff told him he was going to leave; that he said:

"I cannot live with Mrs. Beckmann any longer. I want to tell you confidentially that our temperaments are not adapted to each other; we can't live congenially and happily together."

That he said as far as Mrs. Beckmann was concerned, she was an awfully good woman; he had nothing against her; could say nothing against her in any way whatever; but it was simply a question of temperament, that was all, and that he could not stand it any longer; that he thought it best for both of them that he leave. This separation affected the defendant very seriously, and to the extent that she was confined to her bed and was hysterical with grief. Dr. Saucier persuaded the plaintiff to return, but in a few days, and on December 9th, he left again, and the parties have not lived together since. There is no doubt that plaintiff left against the wishes of defendant.

He testified that he did not think Dr. Saucier's a proper place to live, although he "never discussed it with her, for he wished to save her feelings." The plaintiff claims that when he left defendant on December 9th he made arrangements with her to pay $1,000 a year in semi-monthly payments for the sup-

port of herself and child, and that a certain check in evidence for $41.67 was given her in pursuance of that agreement. There was testimony that this check was to pay board then due the Sauciers, and defendant testified that plaintiff deserted her, and left her without funds, and without any reasons for believing that he would provide in the future for her and the child.

After plaintiff left, defendant made purchases of certain necessary clothing for herself and child at two different stores where the plaintiff had an account. Defendant claims that she had no means of providing future sustenance for herself and child; and, not having heard from the plaintiff, she, about two weeks later, took the matter up with the city attorney of Minneapolis, and complaint for nonsupport was filed on December 22, 1915, and plaintiff was arrested on December 29th. The case was heard before the municipal court of Minneapolis. Plaintiff was represented by an attorney. A hearing was had and plaintiff was found guilty of nonsupport. He did not appeal. Sentence was stayed on plaintiff's agreement to pay $125 per month (which was about one-half of his then salary) for the support of his wife and child.

In June, 1916, the probation officer reported that the payments were not being made, and plaintiff was arrested on a bench warrant. On learning that plaintiff was in the workhouse, defendant, through Dr. Saucier, deposited a cash bail of $250, which sum she had saved to pay on furniture which she had bought, and the plaintiff was released on this bail. He was put on probation for one year on his promise to pay $50 per month for the support of defendant and the child, with an increasing scale as his salary increased. Plaintiff made these payments until December, 1917, the last payment being made on December 18, 1917.

It is undisputed that from December, 1917, to May, 1918, plaintiff made no payment whatsoever for the

support of defendant and the child. The defendant then, upon the advice of the public officers, went before the grand jury of Hennepin county, Minnesota, on March 20, 1918, and gave testimony of these facts. Plaintiff in the meantime had gone to Buffalo, New York, where his employer had an office. He was extradited from New York and brought back to Minnesota on May 19, 1918. There is testimony that when defendant learned the plaintiff was in jail she made an effort to get him out. The plaintiff, on being arraigned, pleaded not guilty, and he was represented by an attorney. Arrangements were then made whereby the plaintiff was to pay defendant for the support of herself and child $50 per month, with an increasing scale as his salary increased. The case was continued, and finally nolprossed on December 27, 1918.

As already stated, the plaintiff alleged, as grounds for the divorce, desertion by the defendant; and extreme cruelty, in instituting the above proceedings against the plaintiff. At the hearing of the instant case an issue was made upon the question whether the plaintiff had been domiciled in the State of Michigan for two years so that he could maintain a bill in this State. The trial court found that he was so domiciled, and that the case was properly brought in this State. While the testimony, as appears in this record, is not very satisfactory upon that subject, we are inclined to agree with the conclusion reached by the circuit judge upon the question of domicile.

Upon the merits of the case, has the defendant been guilty of statutory desertion as claimed in the bill of complaint? The trial court declined to grant a decree upon the ground of desertion. We fully agree with the court below upon that subject. We think the evidence shows that the plaintiff left the defendant and did not sincerely desire to resume marital relations

with her; and it sufficiently appears that he left against the wishes of the defendant, who did not want the separation. The record shows that the plaintiff has acted in this matter upon the advice of counsel, and we are satisfied from the tone of numerous letters written by him to her (many of them through the advice of counsel), that by offering her a home he has sought to take legal advantage of the defendant without any *bona fide* intention on his part to resume marital relations with her. The record contains a number of letters wherein plaintiff requested the defendant to resume marital relations with him at Buffalo, New York. As a reason for not accepting these offers defendant answered that she was not convinced of the sincerity of his letters. In answering one of his letters she, on December 8, 1916, said:

"There is nothing in that letter which gives me any assurance that the move to Buffalo would be a wise one. I might again find myself in a strange city without friends or funds and deserted by you, so I am giving the matter my most careful consideration. The fact that you care nothing for Bobbie and me, also points to a most unhappy existence under your roof. Then, too, the fact that you have the services of a lawyer goes to prove that you are not seriously endeavoring to establish a home in which we can be happily reunited."

Under the date of May 31, 1917, she wrote him, among other things, saying:

"It seems a strange thing to me, Frank, that you can drop in for a hurried call and never care to talk about a reconciliation and then expect me to believe through your letters that you really want us."

On November 28, 1916, he wrote defendant asking her to come and live with him in Buffalo. It nowhere appeared that he had already prepared a home, but he had simply promised her to do so. The rule seems to be well established that where the husband has not

provided a home at the new domicile selected by him, the wife is not guilty of desertion in refusing to follow him. Such offers should always be made in good faith, and it should not appear that they were made for the purpose of obtaining an advantage, or a right to a decree for desertion. That he was acting under the advice of counsel in making these self-serving offers is quite apparent from the record. Under date of December 19, 1916, the plaintiff received a letter from his attorney in which the latter says:

"I received the two letters you sent me and also the letter which you wrote your wife and will reply to the same. * * * You ask whether it is better for you to apply for a divorce or to wait until she does so. * * * As you stated in your letter, you asked her to return to you and live with you in February, but she refused to do so. So, according to your statement, you could not start your action until after a year has passed from said date, because I believe the only ground you have for divorce, is desertion. I suppose if she is desirous of starting an action she can do so in January, since you deserted her at that time."

On September 24, 1917, plaintiff again wrote defendant stating that he wished to resume marital relations with her. On that same day he wrote his attorney a letter enclosing a copy of the same. Replying to his letter the attorney said:

"I received your letter of September 24th along with exhibits a, b, c, and d, and have noted the contents thereof. * * * But as long as you are sending her letters of the kind and character you sent her on the 24th of September, I do not believe they will be able to get very far on the desertion charge."

Finally, when defendant showed a disposition to come to Buffalo, the plaintiff, under date of September 1, 1917, wrote her a letter in which he stated:

"At the present time there are certain conditions that make it seem unwise for you to move. There is

a possibility of my being called on the draft, and while they have missed me to date, I am liable to be called at any time. If you came here and it was necessary for me to go into training, you would be inconvenienced more than under your present circumstances."

A perusal of the correspondence leads us to the conclusion that the plaintiff was not sincere when he asked defendant to resume marital relations, and that he was aiming solely at obtaining grounds upon which to base his own action for divorce. To make out a case of desertion there must be satisfactory proof of three things: (1) Cessation of cohabitation. (2) An intent in the mind of the defendant to desert. (3) That the separation was against the will of the plaintiff. *Rose* v. *Rose,* 50 Mich. 92; *Cooper* v. *Cooper,* 17 Mich. 210. That the separation in this case was not against the will of the plaintiff is very apparent, and the plaintiff is entitled to no relief upon the ground of desertion.

But the principal ground upon which plaintiff claims relief, and on which he was granted relief in the court below, was that the defendant was guilty of extreme cruelty in instituting the actions in the Minnesota courts for the maintenance of herself and child. Three separate acts of cruelty are alleged:

(1) The nonsupport proceedings in the municipal court of Minneapolis on December 22, 1915.

(2) The arrest of plaintiff on a bench warrant out of the same court, issued in June, 1916, when he had failed and neglected to keep up his payments.

(3) The extradition of plaintiff in May, 1918, from New York to Minnesota on the charge of deserting his wife and child.

As we have said, the trial judge found that the defendant was not justified in taking these proceedings, and that her action in instituting them constituted extreme cruelty.

A good deal of time and space are taken up in defendant's briefs citing authorities upon the proposition that a judgment of a court of competent jurisdiction, finding plaintiff guilty of nonsupport cannot be attacked collaterally. We have examined some of the authorities, but do not think it is necessary to comment upon them, for assuming that the judgment could be collaterally attacked, we are satisfied that the defendant was justified in instituting, in so far as she did institute, those proceedings. In order to be guilty of extreme cruelty it must appear that the charges made by the defendant were not only false, but were malicious. Statements made in good faith charging failure to support, or abandonment, do not constitute extreme cruelty. Plaintiff left defendant against her wishes and without just cause, on December 9, 1915. We think it appears by a clear preponderance of the evidence that defendant had no money at the time, and had no funds available with which to pay accruing board of herself and child. Under these circumstances she applied to the public authorities, and followed the advice of the public authorities, to wit, the city attorney and the county attorney, from that time forward. It cannot be said that when a wife in good faith makes such a complaint to the public authorities (especially where such charges are sustained) she is guilty of extreme cruelty within the meaning of our statute. We can find no authorities to that effect.

The evidence on the part of the plaintiff in this case consisted solely of his own testimony, and the letters to his wife (and some of her replies thereto), copies of which he had saved and introduced in evidence.

The defendant did not attend the hearing, but her testimony and that of her witnesses was taken in Minneapolis. Her testimony is corroborated by that

of a number of witnesses. It finally appears that as late as January 15, 1919, and about three weeks before he filed his bill, the plaintiff wrote his wife importuning her to get a divorce from him, offering to pay the expense thereof. In that letter, among other things, he said:

"I am to blame for the trouble that has come to me, Julia. I admit that, but please don't cause me failure and distress, just because I was a fool. I caused you a lot of trouble, too. I know it now, but realizing all that does not help it, that is past history. * * * There is not one thing written in this letter which is meant to show one speck of bitterness, Julia. You are not blamed for anything. My conscience tells me to say that. There is no resentment left. Some day when this whole affair is settled and I come through Minneapolis, I am going to tell you a true story. No one ever guessed the truth, and when I tell you, you will pity me. I'll tell you now that it was not your fault, nor an outside influence. I swear it. * * * No appearance will be made against you, either personally or through counsel."

We are by this record clearly convinced that the plaintiff has not sustained the burden of proof necessary to obtain a divorce upon the ground of desertion, or of extreme cruelty, and it appearing that the defendant at no time has desired a divorce, we think it our duty to dismiss the bill of complaint and leave the parties where the law has placed them. We do not think it a case where the court should grant any relief to the plaintiff. The decree below will be reversed, and the bill of complaint dismissed, with costs of both courts to the defendant.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.