## ELSWICK v. ELSWICK.

No. 17575.    Opinion Filed March 13, 1928.

(Syllabus.)

**1. Divorce — False Charges of Adultery Against Husband Made by Invalid Wife Held not "Extreme Cruelty."**

Where the wife, who was suffering from a serious physical ailment which magnified her emotions and disturbed generally her mental processes, repeatedly made false charges of adultery against her husband, but not through malice, nor for the sole purpose of inflicting pain, and the effect of which did not impair the husband's health, held, that such false charges do not con-stitute "extreme cruelty," and a divorce granted the husband upon such ground is unauthorized under our law.

**2. Same—Inequitable Property Settlement Reversed with Decree of Divorce.**

(a) The property settlement in this case, by its own terms, falls with the dissolution of the decree of divorce; and (b) it is further held that the property settlement is inequitable as to the wife.

Commissioners' Opinion, Division No. 2.

Error from District Court, Grant County; Charles Swindall, Judge.

Action for divorce by Pleasant C. Elswick against Marie Elswick. Cross-petition of defendant, Marie Elswick, praying for divorce from plaintiff. Judgment for plaintiff, and defendant appeals. Reversed, with directions to dismiss.

A. C. Glenn and E. A. Scholer, for plaintiff in error.

J. B. Drennan and Breeden & Breeden, for defendant in error.

HALL, C. This was an action for divorce and settlement of property rights. The plaintiff is the husband, and the defendant is the wife. They were married in the year of 1922, at which time plaintiff was about 60 years of age, and the defendant was about the age of 56 years. They lived together as husband and wife for about three years. During that period of time, and at the time this action was tried, plaintiff was the owner of 480 acres of land in Grant county, Okla., and also was the owner of residential property in the town of Lamont, in which they lived at the time of their separation. The value of this land for agricultural purpose was estimated at about $31,000. There was a mortgage against it for $3,500. During their marriage relation a valuable gas well was discovered on an 80-acre tract of land owned by plaintiff.

The evidence discloses that both plaintiff and defendant are industrious, economical, and highly respected people. This controversy arose because of the physical, and the resultant mental, infirmities of the wife. During their marriage the defendant was the victim of an ovarian tumor which was removed by a surgical operation. Her nervous system became disorganized, and in the language of her physician, a witness in the case, "Every phase of her mental attitude and emotions was magnified." Plaintiff was a healthy, robust man.

In this case both parties were seeking a divorce; the husband, Pleasant C. Elswick, was seeking it on the ground of extreme

cruelty; the wife, Marie Elswick, by cross-petition, was seeking a divorce, principally upon the ground of adultery alleged to have been committed by her husband. Plaintiff was granted a divorce. Pursuant to a settlement agreement previously entered into between plaintiff and defendant, she was awarded the sum of $3,000 of the estate. This settlement agreement entered into was conditioned upon the rendition of a decree of divorce. The defendant later repudiated the agreement as being grossly inequitable and inadequate in its provisions for her. In reality, property rights constitute the base of the controversy in this court.

Defendant in error insists that, inasmuch as the trial court's decision was against the defendant, the judgment should not be disturbed on appeal.

It is the settled rule in this state that in an action for divorce the court's findings based on disputed evidence will not be disturbed on appeal unless the decision is against the clear weight of the evidence. That rule has no application here, for the reason that all the evidence of plaintiff and all the evidence of defendant favorable to plaintiff was insufficient in law to justify a decree of divorce in favor of plaintiff. Marriages cannot be dissolved at will, and "divorce cannot be made the panacea for the infelicities of married life." Some one of the statutory grounds must clearly appear. Mere extreme jealousy and accusations of adultery falsely made by the wife against the husband, when such charges are not made in bad faith or with malice, do not constitute extreme cruelty. Of course, the rule is otherwise when the accusations go to the extent of endangering the husband's life by impairing his health. The authorities on this point are all in one direction. The rule has been adopted by each state as it erected its system of jurisprudence. For example: The state of Louisiana founded its system of laws largely upon the "Code of Napoleon," which masterful compilation of laws provided that marriages could be dissolved at will. But the state of Louisiana rejected that rule in the Napoleonic Code, and provided a system of law pertaining to divorce and separation similar to the other American states.

The courts recognize a legal distinction between accusations of adultery made by the husband against his wife and such accusation when made by the wife against the husband. R. C. L., vol. 9, p. 346, states the rule as follows:

"It would seem that charges of adultery falsely made by the wife against her husband are not deemed as serious in proving cruelty on her part as when made by the husband."

That text is supported by numerous decisions by the highest courts of the various states.

The applicable rule is stated in R. C. L., vol. 9, p. 347, as follows:

"Charges of the husband's infidelity become cruelty only when wantonly or maliciously made. Such accusations, though they may not be true, if not made through hatred or ill will, but in good faith to induce the husband to observe his marital duties, are not ground for divorce. So, it has been held that where the wife, a woman of eccentric character, jealous disposition and nervous temperament, aggravated by sexual weakness, habitually nagged her husband by intimations rather than direct accusations of undue intimacy with other women, but it was not shown that his life was endangered, he was not entitled to a divorce on the ground of cruel and inhuman treatment."

Another well-known text, Corpus Juris, vol. 19, pp. 51 and 52, gleaned from the authorities the following rule:

"Ordinarily, false charges of adultery made by either the husband or the wife **maliciously and without probable cause** constitute legal cruelty, although it has been held that where the false charge is made by the wife, the husband is not entitled to a divorce as for cruelty, unless he shows that from his temperament or calling the charges produced or were likely to produce mental suffering beyond the ordinary effect which such a charge would naturally have upon a man. * * * False charges of adultery, however, to constitute cruelty authorizing a divorce **must have been made in bad faith.**" (Emphasis ours.)

The rule announced by these texts is supported by more than 100 cases, and from nearly every state in the Union and insular possessions. The Oklahoma cases in point are: Hildebrand v. Hildebrand, 41 Okla. 306, 137 Pac. 711; Beach v. Beach, 4 Okla. 359, 46 Pac. 514; Lyon v. Lyon, 39 Okla. 111, 134 Pac. 650. Quotations from our own cases would serve no useful purpose, as they are readily available to the profession. Some of the recent cases not found in the texts are Steele v. Steele, 237 Mich. 639; Pearson v. Pearson, 173 N. Y. S. 563; Sallee v. Sallee (Ky.) 280 S. W. 932; Beckman v. Beckman (Mich.) 177 N. W. 144; Kennerley v. Kennerley, 29 Porto Rico, 723; Parman v. Parman (Ore.) 185 Pac. 922 (where the wife was suffering from advanced pregnancy —the court holding that her condition made her more sensitive than at other times).

.Cruelty, especially extreme cruelty, is frequently a term of relative meaning. As used in the statute as one of the grounds for divorce, the Legislature did not define the term, but left it to the wisdom and serious reflection of the courts. Generally speaking, the courts have held that, to constitute extreme cruelty, the element of physical violence is unnecessary.

"It is now very generally held that any unjustifiable conduct on the part of either the husband or wife, which so grievously wounds the mental feelings of the other, or such as in any other manner endangers the life of the other, or such as utterly destroys the legitimate ends and objects of matrimony, constitutes 'extreme cruelty' under the statutes, although no physical or personal violence may be inflicted or even threatened."

This is the language of Justice Valentine in Carpenter v. Carpenter, 30 Kan. 712, 2 Pac. 122, 46 Am. Rep. 108. This language has been. either adopted or appropriated by many courts. Fully appreciating the comprehensiveness of the above language, the courts have never permitted any one of its provisions to comprehend and include a false charge by the wife of adultery committed by the husband as a ground for divorce, unless such false charges were made maliciously or wantonly and for the purpose only of inflicting pain or injuring the husband in his business and means of livelihood and materially lowering him socially. An exception is made, however, in cases where such accusations by the wife, or any other false accusations by her, **actually** injure the health or endanger the life of the husband. In this connection, the pertinent rule was stated by Commissioner Thacker, later a Justice of the Supreme Court of this state. in the case of Lyon v. Lyon, supra, as follows:

"The doctrine is now established that. without physical violence, acts or conduct which. operating upon the mind, and through the mind. upon the physical system, produce bodily hurt or a reasonable apprehension thereof. may constitute extreme cruelty, and therefore cause for divorce; **but the ascertainment of the effect, and not the character, of such acts and conduct is the ultimate purpose of inquiry."** (Emphasis ours.)

The element of injury to the health of the plaintiff does not enter into this case. He never exhibited any indications of approaching ill health because of these false accusations. In fact, at the trial he somewhat resented, or at least scoffed, at the idea that the accusations made him sick or worked an injury to his health. On' this particular point, the case is somewhat analogous to the case of Sallee v. Sallee (Cal.) 218 Pac. 69, in which case the court, in the body of the opinion, said:

"It is related in the complaint that the plaintiff went to sleep while the wife was still talking, of his attentions to other women. If such remarks served as a beneficial sedative, inducing rest and quiet, it is apparently inconsistent to assume that they also constituted cruelty toward him."

A recent and well-considered case on this point is Stover v. Stover, 94 N. J. Eq. 703, decided in 1923, in which it was held that:

"Charges by a wife that her husband was guilty of adultery, made by her in good faith, do not amount to cruelty on her part, where the husband's health was not seriously impaired thereby." (Syl.)

In the present case the false charges were uttered only to the husband and to the woman with whom he was accused of consorting, and were uttered merely as a complaint against apparent misconduct, doubtless prompted and occasioned by her own confused mental condition resulting from ill health. Such false accusations were undoubtedly annoying and vexing to a high degree, but under such circumstances they are but an unfortunate incident to the marital relation. Pfannebecker v. Pfannebecker, 133 Iowa, 425, 110 N. W. 618, 119 A. S. R. 608, 12 Ann. Cas. 543; Rowe v. Rowe, 84 Kan. 696, 115 Pac. 553, quoted with approval in Finnell v. Finnell, 113 Okla. 164, 240 Pac. 62; Barker v. Barker, 25 Okla. 48, 105 Pac. 347.

Plaintiff in error contends that a divorce should have been granted her on her crosspetition. The evidence was in direct conflict, and that question was foreclosed by the trial court. The court's finding in this respect was fully and amply sustained by the evidence.

The next question pertains to the settlement of property rights. In view of what we have said. it is unnecessary to discuss at any considerable length this particular phase of the case. However, by reason of the fact that under our law property rights may be adjudicated without a divorce being granted, it is necessary to give this assignment some consideration.

The undisputed evidence is that, during the period of coverture of plaintiff and defendant, a gas well was discovered on a certain 80-acre tract of land belonging to plaintiff. The royalty from this gas well was $500 per month up to the time of the trial, and covered a period of several months,

indicating that the gas well was "holding up" and had a normal expectancy. In addition to the gas royalty, drip gasoline was saved from the well. This was marketed in addition to the gas royalty. Evidence was introduced, which was not disputed, that this 80-acre tract of land for oil and gas purposes had a market value of about $50,000, fixing the value of the whole estate at nearly $80,000. (However, at some subsequent trial, if there be such, what we have said as to the value of this land because of its actual or prospective mineral contents is not to be considered as conclusive, as there is no attempt herein to finally adjudicate the relative property rights of the parties.)

Without deciding the question as to whether or not the discovery and production of oil and gas or either from the separate property of either the husband or wife is community property or property acquired by the joint efforts and industry of both husband and wife, we hold in the present case, in view of the value of this estate, the condition of the wife's health, and especially where there existed no legal grounds for the divorce granted the husband, that the settlement agreement is clearly inequitable as to the rights of the wife.

For the reasons herein stated, the judgment of the court below in granting the plaintiff, Pleasant C. Elswick, a divorce and settlement of the property rights of plaintiff and defendant, is hereby reversed, with directions to dismiss this action. As attorneys' fees, defendant is allowed the sum fixed and allowed by the lower court, plus the additional amount allowed by subsequent orders of this court.

HERR, LEACH, REID, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 19 C. J. pp. 51, 52, §93; anno. 18 L. R. A. (N. S.) 300: 34 L. R. A. (N. S.) 360; 9 R. C. L. p. 346. (2) 19 C. J. p. 196, §482.