## BRASIER v. BRASIER.

No. 32789.   Nov. 23, 1948.

*200 P. 2d 427.*

Cleo Wilson, of Tulsa for plaintiff in error.

G. C. Spillers, G. C. Spillers, Jr., and Donald S. Vorhees, all of Tulsa, for defendant in error.

CORN, J.   Plaintiff, Ruth Brasier, sued defendant, Henry George Brasier, for divorce on the grounds of abandonment, adultery and gross neglect of duty. Plaintiff alleged the marriage in 1911 and the birth of six children, the five living being adults at the time of this action; that for more than 20 years, following birth of the youngest child, defendant abandoned plaintiff and lived separate and apart from the family, though continuing to support the family in a modest manner; that defendant had accumulated considerable property by reason of their joint industry and that plaintiff owned an undivided one-half interest therein.   Plaintiff sought a divorce, $250 monthly temporary alimony, equal division of the property and $10,000 permanent alimony, and judgment restraining defendant from alienating or encumbering any of the property.

Defendant's answer admitted the marriage, but alleged plaintiff had no right to maintain this action because he had been granted a divorce in Pike county, Ark., on September 13, 1945; that the decree incorporated a written contract of the parties settling their property rights, which was binding upon

plaintiff; and asked for dismissal of plaintiff's action.

In substance, this contract provided that defendant was to support plaintiff the rest of her life, in the event she did not remarry, by furnishing her a home free of all expenses and from $15 to $25 per week cash. Title to the home was to remain in defendant and all other property was to be defendant's absolutely.

By reply plaintiff admitted the purported Arkansas divorce, but alleged same was invalid because defendant was never a bona fide resident as required by the law of that state, and the chancery court was without jurisdiction to enter the decree. Further, that the divorce was obtained by fraud upon the court; that the settlement agreement was unjust and inequitable and procured by fraud, undue influence and duress upon plaintiff, and that both the divorce and the property settlement should be declared void and set aside.

After hearing the case at length the trial court took the matter under advisement and thereafter entered judgment refusing to recognize the validity of the purported Arkansas divorce and property settlement. The court further found that there was approximately $50,000 of property acquired by joint industry of the parties, rendered judgment granting plaintiff a divorce, awarded her the home and furnishings, and also awarded her $24,000 as permanent alimony, payable at the rate of $200 per month.

The evidence established that defendant left plaintiff about 1925, and thereafter lived separate and apart, although continuing to support the family. The record reflects that at the time defendant made the property settlement with defendant preparatory to procuring the Arkansas divorce, this was done in contemplation of his being free to enter into another marriage.

Plaintiff has a limited education and is wholly untrained for any gainful occupation, seems incapable of understanding financial or legal matters, and in addition is extremely deaf. Over the years she has occupied herself entirely with rearing their children, and the evidence shows that during their childhood it was necessary for them to work and all were employed at one time or another by defendant.

Defendant is a man of enterprise and business ability who, over the years of marriage, has accumulated considerable property in Tulsa county, composed of six barber and beauty shops, a barber and beauty supply business, all of which were going concerns at the time of the trial. In addition he owned real estate valuable for development purposes, some houses purchased for reconditioning, and surplus supplies and equipment incident to his barber and beauty shop business. Plaintiff's evidence fixed the value of this property in excess of $53,-000, while defendant contended the value should be set at $30,400. Testimony offered for the purpose of establishing the latter figure was excluded for reasons hereinafter mentioned.

In seeking reversal of the trial court's judgment defendant first contends that where a court of competent jurisdiction of a sister state renders a judgment in relation to subject matter within its jurisdiction, the presumption favors validity thereof, and clear, cogent and convincing evidence is required to overcome such presumption. The second contention is that where there is an attempt to defeat such a judgment on the ground same was obtained by fraud, this must be proved by a preponderance of evidence, so as to overcome all opposing evidence and the presumption of validity favoring the judgment. Both propositions turn upon the question as to the weight to be given to judgments rendered in another state, and thus best may be considered together.

In December, 1944, defendant made a trip to Arkansas and stayed a week or ten days at a hotel, and during that time consulted a lawyer concerning the

securing of a divorce. In March, 1945, he returned to Arkansas and instituted divorce proceedings against plaintiff. His testimony was that he had spent between two and four weeks in Arkansas prior to that time, although he had rented a room in a private home. The following May defendant prevailed upon plaintiff to agree to his securing the divorce and to enter into the property settlement. Thereafter, in August, 1945, defendant filed his amended petition in the Arkansas court and a decree of divorce, incorporating the property agreement, was entered September 13, 1945.

The evidence showed defendant made four trips to Arkansas, the first being made with the intention of seeking a divorce. At all times during this period defendant had a place of residence in Tulsa, maintained and managed his business there, paid taxes in Oklahoma while owning no property in Arkansas, and neither knew nor became acquainted with people in that state other than the attorney, who represented him there.

Plaintiff's evidence, based upon the testimony of his own children who worked for and with defendant, established that he never indicated any intention of establishing a domicile in Arkansas, and during the period of his alleged residence there he was in Tulsa practically all of the time managing his affairs there.

Although recognizing the rule announced in Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, defendant insists that since the Arkansas court assumed jurisdiction and found defendant was a resident and under the jurisdiction of the court, the burden then was upon plaintiff to establish lack of foundation for the judgment of the Arkansas court, otherwise the same cannot be set aside. Thus defendant urges that because of that court's finding that defendant was a bona fide resident of the state, the courts of Oklahoma cannot assume such residence was a sham and assumed only for the purpose of securing the divorce.

Proper determination of this appeal involves consideration of two questions. First, whether the Arkansas chancery court ever acquired jurisdiction of the subject matter of the action; and, second, whether plaintiff herein in an action in our courts could question the Arkansas court's jurisdiction of the subject matter in a collateral attack, after having entered her appearance in the Arkansas court.

Examination of recent decisions reveals that the Arkansas court recognizes that one seeking a divorce there actually must be domiciled in that state and not some other, and their statutes contemplate actual, bona fide residence and not a residence assumed only for purposes of the divorce. Barth v. Barth, 204 Ark. 151, 161 S. W. 2d 393; Gilmore v. Gilmore, 204 Ark. 643, 164 S. W. 2d 446.

It is generally recognized that domicile in the state where a divorce is sought is a prerequisite when determining whether a divorce decree shall be recognized in another state, when the question is raised that the court rendering the decree had no jurisdiction of the subject matter. Andrews v. Andrews, 188 U. S. 14, 74 L. Ed. 336, 23 S. Ct. 237; Kegley v. Kegley, 16 Cal. A. 2d 616, 60 P. 2d 482.

Domicile has been defined as " . . . the inherent element upon which the jurisdiction must rest . . . ." Andrews v. Andrews, supra. Thus where domicile in good faith for a prescribed period is a prerequisite to a court having jurisdiction of the subject matter, there can be no jurisdiction in the absence of such domicile. Bell v. Bell, 181 U. S. 175, 45 L. Ed. 804, 21 S. Ct. 551; Williams v. North Carolina (II) 325 U. S. 226, 89 L. Ed. 1577, 65 S. Ct. 1092; Cohen v. Cohen, 319 Mass. 31, 64 N. E. 2d 689, 163 A.L.R. 362, and annotations.

It is elementary that jurisdiction of the subject matter cannot be conferred

by consent of the parties. Leidecker Tool Co. v. Laster, 39 F. 2d 615. Thus lack of jurisdiction of the subject matter could not be cured by plaintiff's entry of her appearance in the Arkansas court. Andrews v Andrews, supra. It being unnecessary for decision herein, we refrain from consideration of whether the plaintiff would be estopped to question the matter of jurisdiction of her person (because of her entry of appearance) in the Oklahoma courts.

To be considered is whether plaintiff was precluded from raising the question of the Arkansas court's jurisdiction to render the decree by a collateral attack upon the theory that the petitioner's domicile was a sham, and that the court entering the decree was without jurisdiction.

In Bell v. Bell, supra, the following rule was announced:

"The recital in proceedings for divorce of the facts necessary to give jurisdiction, may be contradicted in a suit between the same parties in another state."

This rule has been reannounced in Williams et al. v. North Carolina, 317 U. S. 287, 87 L. Ed. 279, 143 A. L. R. 1273, and was most recently reiterated in Estin v. Estin, 334 U. S. 541, 68 S. Ct. 1213, when the United States Supreme Court said:

"We held in Williams v. North Carolina, 317 U. S. 287 . . . . (2) that while the finding of a domicile by the court that granted the decree is entitled to prima facie weight, it is not conclusive in a sister state but might be relitigated there."

Also, see Sherrer v. Sherrer, 334 U. S. 343, 68 S. Ct. 1087.

In Nelson, Divorce & Annulment (2d Ed.) sec. 33.74, is found the following statement, supported by numerous authorities appearing in the footnotes.

"Inasmuch as a sister state decree, rendered in an action in which the defendant was not personally served and did not appear, or in which the jurisdictional facts were not litigated, is not a conclusive adjudication of such facts, but is subject to attack on jurisdictional grounds, whenever such a decree is pleaded or presented, as a cause of action or defense, inquiry may be made with respect to the existence or nonexistence, at the time of rendition of the decree, of facts which were prerequisite to the assumption or exercise of jurisdiction of the rendering court. . . . Whatever the rule as to domestic decrees, where the facts bearing upon the existence of jurisdiction in a foreign or sister state court were not actually litigated or settled, after appropriate opportunity to present their contentions had been afforded to all who had an interest therein, the existence of such jurisdiction remains an open question, which may be inquired into, re-examined, and determined, although evidence of jurisdictional facts was offered, and the decree, as well as the record upon which it is based, is in all respects regular upon its face. Nor is inquiry into jurisdictional facts forbidden or precluded, in such circumstances, by the Full Faith and Credit Clause.

"In a proper case, any jurisdictional fact may be re-examined. Thus, where jurisdiction depends upon domicile, as it usually does, domicile is a jurisdictional fact, which is subject to collateral inquiry or re-examination even as between the parties, in a court in which full faith and credit for the decree is sought, although evidence was offered on that question in an action in which the decree was rendered. . . ."

While the record reflects that plaintiff, defendant in the Arkansas proceedings, signed her entry of appearance, it is further revealed that she filed no pleadings in the action, was not represented by counsel, and was not present at the trial when the defendant secured the decree of divorce, and no issue was presented to the Arkansas court relating to the jurisdictional requirement of defendant's domicile there.

We think it unnecessary to inquire further into the question as to the extent to which the Full Faith and Credit Clause of the Federal Constitution is to

be applied in such instances. Defendant admittedly pretended to establish a domicile in Arkansas for the purpose of securing a divorce. The evidence clearly establishes that defendant never was domiciled in Arkansas, and by reason of such showing the presumption favoring validity of such jurisdiction is overcome. The state of the record likewise is sufficient to support the trial court's finding that defendant procured the decree from the Arkansas court by the fraud practiced upon that court by claiming a domicile sufficient to give the court jurisdiction to render the decree when, in truth and fact, no conscientious effort had been made to comply with the requirements as to residence.

Defendant next contends that when fraud in the procurement of a written instrument is alleged, such allegation must be proved by a preponderance of the evidence sufficient to overcome all opposing evidence and to repel all presumptions of good faith.

Defendant relied upon the written contract settling the parties' property rights. Plaintiff admitted execution of the instrument, but alleged same was procured by fraud, duress and undue influence exerted over her by defendant.

Defendant relies upon our decisions defining actionable fraud, and insists that no false representations were made to plaintiff, and that plaintiff offered no evidence of any nature tending to show duress or undue influence. It is generally true that the party who relies upon a cause of action based upon fraud has the burden of proving a representation was made. 37 C. J. S. sec. 96 et seq.

The contract in question gave plaintiff a home for life, or until remarriage, and provided for payments of from $60 to $100 per month. In return for agreeing to such settlement plaintiff renounced any rights to make a claim to defendant's estate. Even title to the home plaintiff was to receive remained in defendant, and she even contracted not to change the beneficiary (defendant) of her life insurance. Briefly, this agreement stripped plaintiff of any right to share in the property acquired during their marriage. The testimony in the record which reveals plaintiff's lack of understanding and familiarity with business affairs, and which indicated her apparent lack of understanding of the transactions, is sufficient to overcome defendant's argument that there was no fraud or undue influence exerted.

We have held that one relying upon a written contract of settlement in defense of a divorce action has the burden of showing the contract was fairly entered into and was just; Montgomery v. Montgomery, 41 Okla. 581, 139 P. 288; and, where a property settlement between husband and wife is apparently unfair on its face equity raises a presumption of the invalidity of the agreement. Mann v. Mann, 135 Okla. 211, 275 P. 348. Also, see Elswick v. Elswick, 130 Okla. 42, 265 P. 121, to the effect that a $3,000 settlement to the wife when the property was worth approximately $80,000 was obviously inequitable.

The testimony showed that defendant prevailed upon plaintiff to execute this contract as a prerequisite to his divorce and contemplated remarriage. She was taken to an attorney's office where, it was testified, the matter was explained to her and she forthwith signed the agreement. It is true that plaintiff's testimony was partially conflicting as to her reasons for signing. However, considering the obvious inequities resulting from the contract, we are of the opinion the contract was so patently unfair upon its face as to justify the trial court in setting it aside. It is unreasonable to assert that this agreement was fair from plaintiff's standpoint, when it does not appear from the record that she was in any manner informed as to the extent of defendant's property, or exactly which rights she surrendered by execution of the agreement. We are of the opinion

that the unjust advantage gained over plaintiff by inducing her to sign the contract in question constituted a legal fraud upon the wife, sufficient to provide the basis for the trial court's refusal to recognize the agreement.

Defendant next contends that an award for alimony must be reasonable, with due regard to the value of the husband's property at the time of the award. It is urged that the total here awarded to plaintiff amounts to approximately 60 per cent of his total estate, and that such allowance is inequitable in view of the value of defendant's property. Numerous decisions are cited in behalf of this argument, to the effect that one-third, or one-fourth, is generally upheld as an equitable division of jointly-acquired property in such cases.

It is a settled rule that an award of alimony under the statute must be just and reasonable, having regard for the value of the husband's estate and the situation of the parties, but this does not necessarily mean an equal division of the property. Hughes v. Hughes, 177 Okla. 614, 61 P. 2d 556. Nor is there any rule in this jurisdiction for the allowance of a fixed, fractional amount as alimony, or of the separate property, by mathematical calculation. Burtrum v. Burtrum, 184 Okla. 68, 84 P. 2d 598; Smyth v. Smyth, 198 Okla. 478, 179 P. 2d 920.

The evidence concerning the extent and value of the property has been noted. It is defendant's theory that over the years of separation he expended approximately $40,000 supporting plaintiff, and that this amount, together with the present award, make a total of some $70,000 plaintiff received, or an amount far in excess of the entire value of defendant's property. The fact that defendant provided support for his family, as was his moral and legal obligation to do over the years when he voluntarily remained apart from them, cannot provide the basis for reduction of the ultimate allowance of alimony when divorce is granted for fault of the defendant. In view of the circumstances of the parties, the judgment of the trial court in this respect represented a fair and equitable division of the property.

Defendant's final contention is that it was an abuse of discretion for the trial court not to permit defendant to reopen the case for the purpose of introducing evidence as to the value of his property where no evidence had been offered previously by defendant upon this issue.

All the evidence concerning value of the property was introduced by plaintiff. Defendant offered no evidence concerning the extent or value thereof. Trial of the case consumed several days and both sides rested. When the court, some eleven days thereafter, met pursuant to adjournment, the defendant asked leave to reopen the case in order to offer testimony upon this issue, and the request was denied. Defendant then made an offer of proof that the total value of his property was only $30,400.

Defendant admits that the granting or denial of leave to reopen a case is a matter within the discretion of the trial court. We are of the opinion the action of the trial court in this respect should be approved. No legal reason is given by the defendant for failure to offer testimony upon this issue during the trial, although the plaintiff's witnesses were subjected to cross-examination by defendant's counsel. Defendant had ample opportunity before the trial of the case was completed to present evidence of the kind he later sought to introduce. Defendant's lack of diligence upon this question is apparent.

Judgment affirmed.

HURST, C.J., and RILEY, BAYLESS, and LUTTRELL, JJ., concur. DAVISON, V.C.J., and WELCH, GIBSON, and ARNOLD, JJ., dissent.