## VETTER v. VETTER.
### No. 35761.

Supreme Court of Oklahoma.
March 2, 1954.

Milton W. Hardy, of Hardy & Hardy, Tulsa, for plaintiff in error.

Milsten, Milsten & Moorehead, Tulsa, for defendant in error.

BLACKBIRD, Justice.

Plaintiff in error, hereinafter referred to as plaintiff, instituted an action for, and obtained, an uncontested divorce against her husband, the defendant in error, hereinafter referred to as defendant, in the District Court of Tulsa County, Oklahoma, in the latter part of the year 1949. Previously, a property settlement, by written contract, had been entered into, and, in the divorce decree, the Court, without incorporating any of the settlement's provisions in said decree, merely found that the settlement had been "fully and fairly considered by both parties," that it was "fair and just", that it was an enforcible agreement, that "it was not necessary to make it a part of the decree", and stated: "* * * it is by the Court approved and confirmed."

The settlement contract, among other things, provided in paragraph 3 thereof, that defendant was to pay plaintiff for her maintenance and support after the divorce "while she remained single and unmarried * * *, during a period of ten (10) years and two (2) months following the date of the decree * * * the sum of Three Hundred ($300.00) Dollars, in cash on the 15th day of each succeeding month; * *"

After the transfers of property contemplated in the contract had been made, the contract in all other respects fully executed, and defendant had been making the support money payments, above referred to, faithfully and promptly for a period of more than a year, the present action was com-

menced in March, 1951, by the filing, in the original divorce case, of plaintiff's petition to vacate the decree.

In said petition, plaintiff went into the history of her marital difficulties with defendant and the events leading up to their divorce, alleging, among other things in substance, that they were separated in August, 1949, that shortly thereafter she informed defendant she was going to sue him for divorce, alimony, custody of the children, and a division of property; that he thereupon advised her to employ an attorney who was friendly to him and would not charge "much of a fee"; that thereafter she did consult such attorney and he prepared the property settlement agreement which she accepted upon his advice without knowing the full extent of her husband's financial worth; that at the time she read and signed the agreement she paid no attention to paragraph 3 thereof (supra) extending the maintenance and support money payments over a period of 10 years and 2 months, and she did not learn until January, 1951, that the effect of such term of payment (being more than 10 years) was to make her, instead of defendant, liable for the income tax on said maintenance payments, the payment of which tax will subject her to a possible loss of $9,000 on such income. Other allegations in her petition to vacate were that defendant, a certified public accountant, being versed in tax matters, was fully aware of the significance of such term of payment. Other allegations described other respects in which the settlement contract "was unfair and unconscionable" such as the provision that if defendant died within the payment term specified, the payments should cease. Said petition to vacate also contained allegations to the effect that the trial judge was never informed before the divorce decree was entered of the contract provisions complained of, and, if he had been, would not have signed the decree; and, because of the facts alleged, fraud was not only practiced upon her, but also upon the Court, in its determination of the action.

Plaintiff further alleged that by the divorce decree's references to the settlement contract, said contract was merged into and became a part of said decree, and, by reason of the facts alleged, she was entitled to re-open the case and present evidence for the Court's determination of the parties' respective property rights. She further plead in the alternative, that if the court should find that the contract was not a part of the decree and for that reason the division of property and alimony payments agreed to therein, could not be modified, that then, and in that event, she is entitled to have said contract reformed in the following respects: "First, that the alimony payment of $300 be provided to cover a period of ten years instead of ten years and two months; Second, that the contract be modified by striking therefrom the provisions that said alimony payments shall cease upon the death of the defendant, and Third," that said contract contain an oral agreement that the parties had entered into concerning purchase of stock in the Southwest Sporting Goods Company.

In his answer to plaintiff's petition to vacate, defendant, among other things, denied plaintiff's allegations that in the parties' negotiations leading up to the execution of the settlement contract, he had concealed any of the facts concerning his financial status and assets, or that any fraud had been worked upon either the plaintiff or the Court in entering the divorce decree, and he affirmatively alleged in substance that plaintiff had full knowledge of all facts pertinent to the settlement agreement and that, having accepted all of the benefits of said contract, which he had fully performed, she was estopped from denying its obligations and binding force and could not now obtain the aid of the court in setting it aside.

Upon the cause's trial, at which plaintiff's attorney seems to have never known, to have forgotten, or to have disavowed the charges of fraud upon the court contained in her petition (which apparently was drawn by another attorney), and whereat, plaintiff testified that the only reason she had become "unhappy" with the settlement agreement was the income tax liability that its term of support money payments subjected her to; the Court specifically found that "no fraud was practiced upon the

plaintiff in obtaining her agreement to the settlement of her property and alimony rights", and thereafter entered judgment in favor of defendant, denying plaintiff the relief she had prayed for. From said judgment, plaintiff appeals herein.

In attempting to show that the trial court's judgment was contrary to law and to the evidence, plaintiff urges two propositions, as follows:

(1) "Fraud, in transactions between husband and wife, need be only a failure to comply with the highest degree of good faith and fair dealing as imposed by the statutes relating to trusts in such transactions."

(2) "The burden was upon the husband to overcome the strong presumption of fraud, which he did not do."

In her argument under the first of these propositions, plaintiff refers to Title 32 O.S.1951 § 5, authorizing a husband and wife to enter into "any engagement or transaction" with each other respecting property which either might, if unmarried, enter into, subject to "the general rules which control the actions of persons occupying *confidential relations* with each other as defined by the title on trusts." (Emphasis added.) She then argues for application of the principles referred to and applied in Holt v. Holt, 23 Okl. 639, 102 P. 187; Howell v. Howell, 42 Okl. 286, 141 P. 412; Wooden v. Wooden, 113 Okl. 81, 239 P. 231; Mann v. Mann, 135 Okl. 211, 275 P. 348; Brasier v. Brasier, 200 Okl. 689, 200 P.2d 427, and others. Plaintiff does not cite any rule of law laid down in the syllabus of Holt v. Holt, supra, as controlling in this case, but by extensive excerpts from the body of that opinion attempts to demonstrate that the facts in this case are fully as "opprobrious" as those in that case, and she quotes expressions of the court therein which she represents as fully applicable to the situation here. We have fully examined the record in this case and find little, if any, material similarity between the facts there and those here, other than, in both cases, the wife was the plaintiff in the divorce action. Without describing in detail all of the facts distinguishing the two cases, one of the more salient ones is that here the wife was the moving force in obtaining the divorce. It is undisputed that she was the party who wanted it and insisted upon obtaining it, against the wishes of the defendant. After becoming convinced that plaintiff could not be dissuaded from such a project, defendant did no more than suggest that she consult a certain attorney, who, with his wife, had been intimate friends of the litigants' family in a social way, on the theory that said attorney would be likely to charge little, if any, fee for his services. There is no indication in the evidence here that plaintiff was under any duress, undue influence, or pressure from defendant to engage this particular attorney, and there is not the slightest indication in the record that she was not free to engage whomsoever she pleased, although there is some conflict between her testimony and that of the attorney, as to whether she went to his office on her own initiative, or at his suggestion, after it became apparent that he, too, had been unsuccessful in his efforts to dissuade her from instituting divorce proceedings.

There can be no question that the evidence does not support a charge of active fraud on the part of the defendant. In referring to the trial court's finding on the issue of fraud, however, plaintiff argues that said finding "did not contemplate or include the thought of fraud * * * resulting from the violation of a trust or fiduciary relationship" like marriage, but referred only to the "positive active fraud found in the usual tort case." She argues that defendant was under a duty in the property settlement, not only to refrain from defrauding her, but also to make the fullest and fairest disclosure and explanation of his assets and of all terms of the agreement, and that, under the evidence, he did not discharge his burden of proving that he had fulfilled such duty toward her, citing various authorities, including the following quotation from Mann v. Mann, supra [135 Okl. 211, 275 P. 351]:

"* * * 'yet whenever one of the parties obtains a *possible benefit* from a mutual transaction, equity raises a presumption against its validity, and casts

upon the party asserting it the burden of proving affirmatively his compliance with equitable requisites to thereby overcome the presumption; and the court will not allow any transaction between such parties to stand when assailed, unless there has been the fullest and fairest explanation and communication between them, and absolute good faith and fairness in the party who seeks to establish the contract with the person so trusting him.'

\* \* \* \* \* \*

" \* \* \* 'Whenever \* \* \* an inadequate or hurtful contract is entered into by virtue and under the operation thereof, the injured party by timely, proper action, will always be given relief.'

\* \* \* \* \* \* .

" \* \* \* the burden was on plaintiff to prove good faith and that no *unfair advantage* was taken in procuring the same." (Emphasis added.)

Unlike the wife in Holt v. Holt, supra, the evidence in the present case reveals that plaintiff was not unlearned in business matters, that she had worked in defendant's accounting office, that she had traded in various stocks and properties, and that she had always had a fairly accurate insight and knowledge as to the various assets that the couple had acquired during their married life. The evidence also reveals that sometime before the property settlement was finally reduced to writing, the parties discussed between themselves their various assets and property and what defendant would be willing to do for plaintiff in a financial way if she persisted in her desire for a divorce and he consented not to contest it (which latter feature, i. e., the avoidance of a fair court contest or determination, unlike the facts in Holt v. Holt, supra, and most of the other cases cited by plaintiff, furnished the only compulsion on the part of plaintiff for agreeing to the property settlement suggested by defendant). It is difficult, on the basis of the evidence in this case, to say with any certainty that defendant obtained a "possible benefit," Mann v. Mann, supra, from the arrangement finally agreed up-

on, or that he received any "unfair advantage" over plaintiff or received more, instead of less, than his just share of the couple's property, so that the rule contended for by plaintiff would apply, but, assuming that he did, we still cannot say that, contrary to the trial court's judgment (which must be considered a determination upon that issue, as well as every other issue necessary to support it) that defendant failed to discharge the burden which plaintiff's argument has sought to place upon him. Without unnecessarily lengthening this opinion by describing in detail the evidence pertaining to all the various charges of her petition that plaintiff failed to substantiate at the trial, we will limit our present reference, as typical, to the evidence concerning plaintiff's primary, and— if we are to accept her admission from the witness stand—her *only* reason for complaint against the settlement contract, namely, its provision for extending the term of the support money payments past 10 years, so that (as the parties say, and we assume they are correct) plaintiff would have to pay the income tax on her said income, rather than defendant. Plaintiff's previous testimony had been to the effect that she was so wholly without knowledge of such matters that, even though she read that part of the contract before signing it, she did not realize the significance of such a provision and naturally and consequently it did not occur to her to inquire into it. She admitted that she and defendant had discussed the property settlement at their home previous to her ever going to an attorney, when it appeared that she "might" seek a divorce. Relative to what was said between him and his wife on that occasion, defendant testified:

"I told her at that time that I would give her $100 a month for each daughter as long as they were under age and that I would give her $300 a month for 10 years and 2 months \* \* \*.

\* \* \* \* \* \*

"I told her at that time that I was making this for 10 years and 2 months for the simple reason that I wanted her to pay the income tax on the $300 a month. And I said, I am giving you

$300 a month and $100 a month for the kids in order that you pay the income tax, it would be a lower tax than mine and she said, I understand. * * *"

It was undisputed that on her first trip to the attorney's office, the attorney drafted a settlement contract to be signed by the parties solely upon information furnished him by plaintiff. With reference to the support and maintenance payments, this draft provided, in material part, only that the sum of $300 per month should be paid until plaintiff died or remarried, or until the sum of $36,600 had been paid, whichever event occurred first. Defendant sent said draft back to the attorney without signing it, with the request that it be amended or re-written to include the specific provision that the $300 per month should be paid for "10 years and 2 months", and (as already provided in the event of plaintiff's remarriage) that payment should cease and his estate be under no obligation to make them, in the event his death occurred before the full sum of $36,600 in such payments had been made. As to what transpired when he was informed of this requirement and the discussion he had with plaintiff, the attorney, admittedly an "outstanding" member of the Tulsa County Bar, testified:

." * * * Now, I am no tax expert, I don't pretent to be and I never have given anybody any advice on tax matter(s) and I told her, I said, you should get your tax advice from somebody else because I can't be responsible for advising you. I did not consent to carry out the property settlement agreeent or any other agreement. As far as I ever intended to go in this was merely to file an uncontested divorce and try to get it over for you as easy as possible, if you still insist on doing that. She eventually came into the office and told me that she was not going to wait any longer. She wanted to go ahead and file suit and she signed and sworn to the petition and directed me to file it."

As far as the record shows plaintiff did not consult anyone else concerning the advisability of agreeing to the term of support money payments insisted upon by defendant. On the other hand, it does appear that she was free to do so, had she so chosen. And equally, if not more important, it appears from the testimony of the above witnesses, corroborated to some extent by other evidence, that defendant wanted the support payments to total $36,600, rather than $36,000, and, that his reason for this desire, was not concealed from plaintiff. If defendant had the burden of establishing such lack of concealment, we cannot say, in view of the evidence, that the trial court erred in concluding by its judgment, that he discharged this burden. Said court was in a better position to determine the credibility of the witnesses and to weigh their testimony than is this Court.

Our conclusion as to the above feature of the case applies with equal force to defendant's alleged concealment from plaintiff of his property and assets. The record discloses that previous to the trial on the petition to vacate, plaintiff was allowed to have her auditors examine into these matters by an audit of defendant's financial affairs and they found defendant's affairs substantially the same as plaintiff knew them to be before entering into the settlement contract. We think plaintiff's testimony as a whole, including her cross examinations, reveals that she had an unusually accurate knowledge of the couple's property and its worth before the divorce. In addition to the other evidence mentioned, the trial court was assisted by copies of defendant's income tax returns for several years previous to the divorce, a financial statement he used in obtaining a bank loan, and other valuable and trustworthy evidence which we need not detail. We have examined all of this evidence thoroughly and are unable to conclude that the trial court's findings and judgment on the issues including that of fraud, whether it be applied to patent, positive, and active fraud, or to latent insidious fraud or concealment, is clearly against the weight of the evidence. Accordingly said judgment is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON, O'NEAL and WILLIAMS, JJ., concur.