Emilienne GHERARDI DE PARATA,
Appellant,

v.

Blaise GHERARDI DE PARATA, Appellee.

No. 2916.

Municipal Court of Appeals for the
District of Columbia.

Argued March 1, 1962.

Decided April 13, 1962.

Before HOOD, Chief Judge, QUINN, Associate Judge, and MYERS, Associate Judge of The Municipal Court for the District of Columbia, sitting by designation.

PER CURIAM.

Appellant was convicted of disorderly conduct [1] and drinking in public.[2] He con-

1. Code 1961, 22–1107.

2. Code 1961, 25–128.

James J. Laughlin, Washington, D. C., for appellant.

Marshall E. Miller, Washington, D. C., with whom Sylvan M. Marshall and Joseph B. Danzansky, Washington, D. C., were on the brief, for appellee.

Before HOOD, Chief Judge, QUINN, Associate Judge, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11–776(b).

CAYTON, Judge.

We are asked to rule on the validity of a divorce decree obtained in Alabama by a resident of the District of Columbia. The action was brought below by a wife in the form of a bill to affirm marriage (Code 1961, § 16–422) and to nullify an allegedly fraudulent divorce obtained by the husband in Alabama. She alleged that she had never been in Alabama and that the husband had never resided there. Husband in his answer alleged that the wife had voluntarily appeared and answered divorce proceedings brought by him "as a bona fide resident of the State of Alabama for the time required by law," and that the decree he obtained there was res judicata of the marital status of the parties.

There was produced at trial a paper entitled "Acceptance of Service of Process and Answer and Waiver of Respondent." The wife admitted signing such paper, but said she did not know or understand what it was, and that she had signed it under her husband's misrepresentations and duress. On conflicting evidence the trial court found that the wife knew of and consented to the proposed divorce proceedings, and also signed a letter to an Alabama lawyer, authorizing him to file the "waiver" in her behalf. The opinion of the trial court in this case recites:

"On August 26, 1960, the husband flew to Birmingham, Alabama, stayed there four or five hours, during which time he did those things which the wife's attorney in that city told him were necessary for the issuance of a decree. He never appeared in court in the divorce forum, and returned to Washington later the same day."

The decree was signed the next day August 27 and sent to the husband. On August 29 he notified his wife in writing that they were divorced. Four days later the wife filed this suit.

Although his complaint filed in the Alabama court, and his testimony, in the form of an affidavit, recited that he was "a bona fide resident of the State of Alabama and have been such for the period required by law" these statements were false. The trial judge acknowledged "that the proceedings in Alabama would appear on their face to have been irregular and that the husband did not have such residence as to confer valid jurisdiction on the courts of that State." But he held that because the wife consented to the divorce, interposed no objection to the lack of jurisdiction in the Alabama trial court and took no appeal from the divorce decree, the courts of this

jurisdiction are without power to give her relief under the full faith and credit doctrine. The wife has brought this appeal.

We state at this point the facts as to residence and domicile. The husband had for severel years lived and operated a restaurant in the District of Columbia, and he still does. He has never been a resident of Alabama,[1] and was in that state just long enough to sign papers in the divorce case, flying there and back the same day. There was no semblance of domicile in Alabama, or even a claim that he intended to stay there a single night. His wife has never been there.

This court has ruled that where husband and wife personally *appeared and participated* in a Maryland divorce proceeding and there was a full opportunity to contest the jurisdictional issue of residence, the Maryland divorce decree was entitled to full faith and credit and was not subject to collateral attack in the District of Columbia. Wolf v. Wolf, D.C.Mun.App., 162 A.2d 776. We cited Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429; Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 1097, 92 L.Ed. 1451; Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552, and Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146.

In the Sherrer and Coe cases, just cited, the Supreme Court laid down the rule that when a defendant has appeared and participated, and the parties were given full opportunity to litigate the issues, it was not later open to such defendant to make a collateral attack on the divorce decree. The other cases just cited express the same general view. Earlier, the Supreme Court had held that a divorce decree is not entitled to full faith and credit when it appeared that the plaintiff had not acquired a bona fide residence in the adjudicating state. Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577.

The Supreme Court has not squarely decided whether the rule of Sherrer and Coe is applicable when plaintiff's "residence" is shown to have been a sham and the non-resident defendant has done no more than enter an appearance. In such a situation we think it reasonable to say that relief should not be withheld from one challenging the validity of a foreign decree. Full faith and credit is by no means universal or automatic. Thus in White v. White, 80 U.S.App.D.C. 156, 150 F.2d 157, it was held that the doctrine did not apply when a husband made a trip to Florida for the sole purpose of securing a divorce, with no intention of establishing a residence there. See also Ryan v. Ryan, D.C., 139 F.Supp. 98, aff'd 97 U.S.App.D.C. 288, 230 F.2d 838.

At the heart of all divorce litigation, as the initial basis for accepting and exercising jurisdiction, is a true and valid domicile. "Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil." Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 1095, 89 L.Ed. 1577. And it is settled law that such jurisdiction cannot be created or conferred by consent of the parties. This rule has been recognized and followed in Alabama. Hartigan v. Hartigan, 272 Ala. 67, 128 So.2d 725; Gee v. Gee, 252 Ala. 103, 39 So.2d 406; Jennings v. Jennings, 251 Ala. 73, 36 So. 2d 236, 3 A.L.R.2d 662

It is said that the Alabama decree could not be collaterally attacked in that State and hence cannot be attacked in this jurisdiction. In a broad way this contention was answered by the Supreme Court in Williams

1. Code of Alabama, Title 34, Section 29 (as amended) provides: "When the defendant is a nonresident, the other party to the marriage must have been a bona fide resident of this state for one year next before the filing of the bill, which must be alleged in the bill and proved; provided however, the provisions of this section shall not be of force and effect when the court has jurisdiction of both parties to the cause of action."

v. State of North Carolina, supra, in these words: "To permit the necessary finding of domicil by one State to foreclose all States in the protection of their social institutions would be intolerable." And the Alabama Supreme Court has specifically held that for want of domiciliary jurisdiction, divorce decrees of that State are not entitled to full faith and credit in other jurisdictions.[2] Such collateral attacks have many times been successfully made in this and other jurisdictions.[3]

Accepting the trial judge's finding that the wife voluntarily signed a waiver, there still remain grave questions as to its legal effect, and as to whether what followed were "proceedings conducted in a manner consistent with the highest requirements of due process * * *."[4] The "waiver" contained a statement that she had received a copy of the complaint and an admission that her husband "is a bona fide resident of the State of Alabama." The first of these statements was palpably a fiction, for no action had then been filed and no complaint had then been drawn or served on her. She could not have been joining issue on any allegation, for none had been made. And her admission that her husband was a resident of Alabama was of no legal effect, and could not serve to confer jurisdiction, as we have already stated.

When the husband flew to Birmingham his only contact and source of information or advice was the lawyer he (or someone for him) had selected *to represent his wife;* not then, or before or since, has he ever seen the lawyer who purportedly represented him. If this was not collusion it was perhaps something more unfortunate: it resulted in a tangle of confusion in which legal rights and due process were not even accorded a passing wave of recognition. Astride the whole situation was the inescapable fact that the husband could never legitimately claim that he was a resident of Alabama. He flew in, stayed only long enough to sign a complaint and affidavit, and four or five hours later was winging his way back to his home and business in 'Washington. Neither in the Alabama case nor in this one was it ever intimated that he had the slightest intention of quitting the District of Columbia or of living or remaining in Alabama: there was not even the customary pious pretext of animus manendi. His claim that he was a resident of Alabama "for the time required by law" was entitled to no weight whatever. Not on such a claim can the full faith and credit clause be called into operation.

■ Here there was not such actual appearance and "participation"[5] by the wife as to justify recognition of the decree which followed. The rule announced in Sherrer and Coe does not require it, and we hold that for lack of jurisdiction over the res, or over either of the parties, the Alabama decree is subject to challenge in this jurisdiction.

There is confusion aplenty as to the validity of foreign divorce decrees; and we realize that this decision may not serve

2. Hartigan v. Hartigan, supra; cf. Aiello v. Aiello, 272 Ala. 505, 133 So.2d 18.

3. See e. g., Ryan v. Ryan, and White v. White, both supra; Schaefer v. Schaefer, 30 Misc.2d 278, 214 N.Y.S.2d 59; Brasier v. Brasier, 200 Okl. 689, 200 P.2d 427; Staedler v. Staedler, 6 N.J. 380, 78 A.2d 896, 28 A.L.R.2d 1291. For general comments, see 17A Am.Jur. Divorce and Separation, § 968 et seq.; 28 A.L.R.2d, pages 1321 et seq.

4. Vinson, C.J., in Sherrer v. Sherrer, supra, 334 U.S. at p. 356, 68 S.Ct. at p. 1093, 92 L.Ed. 1429.

5. Participation seems to have been made the deciding test in many state cases dealing with the validity of foreign divorce decrees. See, e. g., Nappe v. Nappe, 20 N.J. 337, 120 A.2d 31; Schlemm v. Schlemm, 31 N.J. 557, 158 A.2d 508; Boxer v. Boxer, 7 A.D.2d 1001, 184 N.Y.S.2d 303, affirmed 7 N.Y. 781, 194 N.Y.S.2d 47, 163 N.E.2d 149; see also, cases cited in footnote 2, supra.

to dissipate the confusion, or point the way to complete tidiness and symmetry in this field of law. But we are satisfied that it is dictated by the circumstances of this case.

Reversed.